## 0998

Mary W. SCOTT, Respondent-Appellant v. MID CAROLINA HOMES, INC., Appellant-Respondent.

(359 S. E. (2d) 291)

Court of Appeals

*Marvin E. McMillan, Jr.*, of *Weinberg, Brown & McDougall*, Sumter, *for appellant-respondent.*

*Douglas J. Robinson, Robert J. Sheheen* and *John W. Rabb, Jr.*, all of *Savage, Royall, Kinard, Sheheen & Byars*, Camden, *for respondent-appellant.*

Heard June 22, 1987.

Decided July 27, 1987.

BELL, Judge:

Mary W. Scott commenced this action against Mid Carolina Homes, Inc. to recover damages for Mid Carolina's alleged refusal to honor a contract to sell a mobile home. Scott's complaint stated causes of action for fraud, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Unfair Trade Practices Act.[1] At the close of Scott's testimony, the circuit judge granted Mid Carolina's motion for directed verdict on the fraud claim, but

---

[1] Sections 39-5-10 to -560, Code of Laws of South Carolina, 1976, as amended.

submitted the other two causes of action to the jury. The jury returned a verdict in Scott's favor, awarding her $3,600.00 actual and $6,400.00 punitive damages for breach of contract accompanied by a fraudulent act and $3,000.00 actual damages for violation of the Unfair Trade Practices Act. The circuit judge affirmed the jury's verdict. He also awarded Scott costs and attorney's fees of $1,800.00 for her unfair trade claim, but denied her motion to treble her damages for the statutory violation. Mid Carolina appeals the jury verdicts, and Scott appeals the amount of attorney's fees and the refusal to treble damages. We affirm the award for breach of contract accompanied by a fraudulent act, but reverse the award of damages and attorney's fees under the Unfair Trade Practices Act.

On March 23, 1985, Scott and her husband visited Mid Carolina's sales lot in Hartsville, South Carolina, looking for a mobile home to purchase for Mrs. Scott's mother. One of the salesmen, Neal Phillips, invited the Scotts to accompany him the following Saturday to Mid Carolina's lot in Sumter, South Carolina, to see a repossessed 1984 mobile home priced at about $5,600.00. When the Scotts returned to the Hartsville lot on Saturday, March 30, Phillips was not there, but Ashley Hardwick, another salesman, offered to show them the mobile home at the Sumter lot. The Scotts agreed and drove to Sumter. While examining the mobile home, they discussed its purchase with Hardwick. He told them the purchase price was $5,644.00,[2] to be paid in full before delivery. Mrs. Scott then decided to purchase the home for the stated price. She gave Hardwick a check for $2,913.71, agreeing to pay the balance before April 30. Hardwick, in turn, promised her the mobile home would be moved to the Hartsville lot by Friday, April 5. Before the Scotts left the lot, Hardwick filled out a form entitled "A Plain Language Purchase Agreement." This document, referred to by Mid Carolina as a "Form 500," contains a description of the mobile home, Mrs. Scott's name and address, and the

---

[2] According to the testimony of Mid Carolina's vice-president, both Hardwick and Phillips mistakenly read the wrong column on the inventory list and quoted Mrs. Scott the amount of the mortgage rather than the purchase price.

amount of the purchase price, down payment, and balance due. In the lower left corner of the form is a space for the dealer's signature accompanied by the following statement: "Not Valid Unless Signed and Accepted by an Officer of the Company." This space was never signed. According to Mr. Scott's testimony, Hardwick told the Scotts that Phillips would have to sign the form so that he could obtain his commission as the original salesman. Mrs. Scott signed her name as buyer in the lower right corner.

During the following week, the Scotts received a telephone call from Phillips telling them to meet him the following Saturday, April 6. Accordingly, the Scotts drove to the lot on Saturday. There Phillips told them he was unable to sell them the mobile home because it had a bent frame. The Scotts offered to take the home anyway and sign a release for the frame, but Phillips said the South Carolina Manufactured Housing Board would not permit him to sell the home with a bent frame.

On April 12, 1985, another couple signed a Form 500 to purchase the same trailer from Mid Carolina for $9,220.00. This form was signed by an officer of Mid Carolina, and the purchase was consummated.

At this time, Mid Carolina still had Mrs. Scott's check, which it subsequently cashed on April 19. On April 25, Mrs. Scott's attorney sent Mid Carolina a letter stating that Mrs. Scott was prepared to comply with the terms of their "binding contract" and that failure to deliver the mobile home by April 30 would be a breach of that contract. Mrs. Scott's attorney sent a second letter on May 13 informing Mid Carolina that he considered the contract breached and that if Mrs. Scott's down payment were not returned within seven days, she would file an action for fraud or pursue a criminal warrant. Mid Carolina returned the down payment by a check dated May 15, 1985.

On May 28, 1985, Mrs. Scott filed a complaint alleging Mid Carolina had breached a contract to sell her the mobile home. Mrs. Scott sought actual and punitive damages under three theories: fraud, breach of contract accompanied by a fraudulent act, and violation of the Unfair Trade Practices Act. The circuit judge directed a verdict in Mid Carolina's favor on the fraud claim and submitted the other two causes

of action to the jury. The jury awarded Mrs. Scott $3,600.00 actual damages and $6,400.00 punitive damages for breach of contract accompanied by a fraudulent act and $3,000.00 actual damages for violation of the Act. The circuit judge upheld the jury's verdict, awarded Scott costs and attorney's fees for the statutory violation, and denied Scott's motion to treble the damages under the Act.

## I.

Mid Carolina urges reversal of the verdicts on the following grounds: (1) Mrs. Scott failed to prove the elements of breach of contract accompanied by a fraudulent act, (2) the evidence supports Mid Carolina's defenses of accord and satisfaction and mistake, (3) the South Carolina Unfair Trade Practices Act does not apply to Mid Carolina's conduct, and (4) the judge erred in refusing to give the jury Mid Carolina's requested charges on fraud and mistake.

## A.

First, Mid Carolina argues Mrs. Scott failed to prove breach of contract accompanied by a fraudulent act.

To recover for breach of contract accompanied by a fraudulent act, a plaintiff must prove three elements: breach of a contract, fraudulent intent relating to the breach, and a fraudulent act accompanying the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S. C. 51, 336 S. E. (2d) 502 (Ct. App. 1985). Mid Carolina contends Mrs. Scott failed to prove any of these elements.

Mid Carolina argues it could not have breached a contract because no contract existed. It maintains there was no agreement on its part to be bound by any contract of sale because no officer ever signed the Form 500. Thus, Mid Carolina contends, there was only an unaccepted offer by Mrs. Scott to purchase the mobile home for $5,644.00.

On appeal from a jury verdict, our review is limited to determining if there is any evidence to support the verdict. *Madden v. Cox*, 284 S. C. 574, 328 S. E. (2d) 108 (Ct. App. 1985), *cert. dismissed*, 286 S. C. 127, 332 S. E. (2d) 102 (1985). The record contains some evidence showing that Mid Carolina consented, either expressly or impliedly, to sell the mobile home to Mrs. Scott under the terms alleged by her.

The jury could have concluded from the Scotts' testimony that Hardwick and Mrs. Scott entered an express oral contract before Mrs. Scott ever saw the Form 500. The evidence shows the parties had already agreed on the essential elements of the contract: the price, the method and schedule of payment, and the repairs to be performed prior to delivery. Further, at that time, Mrs. Scott had every reason to believe Hardwick had authority to enter a contract. The discussion took place at Mid Carolina's main lot; Hardwick went into the office to confirm the sales price; he informed Mrs. Scott of the required time for payment; and he made no mention of any need to obtain approval from an officer of the corporation.

Alternatively, if the Form 500 is construed merely as an offer to purchase the mobile home, the jury could have concluded Mid Carolina impliedly accepted the offer. Assent to an offer need not be expressed to constitute a contract, but may be inferred from acts and conduct. *Florence City-County Airport Commission v. Air Terminal Parking Co.*, 283 S. C. 337, 322 S. E. (2d) 471 (Ct. App. 1984). Mid Carolina accepted Mrs. Scott's check for one-half of the purchase price on March 30 and deposited it in its account almost three weeks later, after it had had ample time to reject the offer. Mid Carolina also retained Mrs. Scott's Form 500 in its files, despite testimony by its vice-president that all Form 500s are normally destroyed if Mid Carolina rejects the contract. According to both Mr. and Mrs. Scott, the reason Phillips gave for being unable to sell them the home was not that the form had been rejected or that there was no contract, but rather that the frame was bent. Because Mid Carolina's subsequent course of conduct was consistent with the existence of a contract, the jury could have concluded that Mid Carolina impliedly accepted Mrs. Scott's offer by its conduct.

Next, Mid Carolina contends Mrs. Scott failed to prove it either acted with fraudulent intent or committed any fraudulent act in connection with the breach of contract. Fraudulent intent is normally proved by circumstances surrounding the breach. *Floyd v. Country Squire Mobile Homes, Inc., supra.* In this case, fraudulent intent can be inferred from Phillips's statement to the

Scotts that he was not permitted to sell them the mobile home because its frame was bent. Whether or not the frame was actually bent, it is clear that Phillips was not prohibited from selling the mobile home because of a bent frame. In fact, the home was sold to another couple for a substantially higher price, apparently without any repairs having been performed. The jury could also have seen Phillips's statement, the sale of the home at a higher price, and the subsequent cashing of Mrs. Smith's check as an "act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." *Harper v. Ethridge*, 290 S. C. 112, 119, 348 S. E. (2d) 374, 378 (Ct. App. 1986).

Since there was evidence from which the jury could infer the existence of a contract, fraudulent intent, and a fraudulent act, we sustain the jury's award of actual and punitive damages for breach of contract accompanied by a fraudulent act.

### B.

Next, Mid Carolina contends the evidence at trial established the contractual defenses of accord and satisfaction and mistake, relieving it of any liability to Mrs. Scott.

Mid Carolina asserts the May 13 letter from Mrs. Scott's attorney requesting return of her down payment constituted an accord which was satisfied when Mid Carolina refunded the money.

An accord is a contract under which an obligee agrees to accept a substituted performance in future satisfaction of the obligor's duty. *Stultz Electric Works v. Marine Hydraulic Engineering Co.*, 484 A. (2d) 1008 (Me. 1984); Restatement (Second) of Contracts § 281 comment a (1981).

The letter from Mrs. Scott's attorney contemplated no substitute performance; it merely asked for return of the money Mrs. Scott had paid. Additionally, we cannot say the letter established, as a matter of law, an agreement by Mrs. Scott to abandon her contractual claims against Mid Carolina in return for a refund of her down payment. The letter's language merely threatened fraud or criminal actions if the money were not returned. Without an

agreement to discharge the obligation, there can be no accord. *Mercury Marine Division, of Brunswick Corp. v. Costas*, 288 S. C. 383, 342 S. E. (2d) 632 (Ct. App. 1986). Since there was no accord, there could be no satisfaction. *Id.*

Mid Carolina also argues it is entitled to rescind the contract because its sales personnel were acting under a mistake of fact when they told Mrs. Scott the purchase price.

Unilateral mistake is not by itself ground for rescinding a contract. A contract may be rescinded for unilateral mistake only when the mistake has been induced by fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to the rescission, without negligence on the part of the party claiming rescission, or when the mistake is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement. *King v. Oxford*, 282 S. C. 307, 318 S. E. (2d) 125 (Ct. App. 1984). Mid Carolina has not demonstrated the presence of any of the circumstances that would permit rescission for unilateral mistake.

Relying on *Hester v. New Amsterdam Casualty Co.*, 268 F. Supp. 623 (D. S. C. 1967), Mid Carolina asserts it is entitled to rescission because Mrs. Scott should have been put on notice by the amount of the price that Mid Carolina was acting under a mistake of fact. In *Hester*, however, the Court was careful to observe that the parties lacked equal knowledge of the facts and that the party opposing rescission was aware of the fact about which the other party was mistaken. In this case, Mid Carolina was in a superior position to know the intended price of the mobile home. Mid Carolina set the price, was in possession of the documents listing the price, and was in the business of selling mobile homes. Nothing Mrs. Scott said or did induced Mid Carolina's mistake, if there was one. Nor is there evidence she knew of the mistake and sought to take unfair advantage of it. The *Hester* rule is, therefore, inapplicable to the facts of this case, and Mid Carolina is not entitled to rescission.

## C.

Mid Carolina next argues its conduct did not violate the Unfair Trade Practices Act, because the sale of mobile

homes is exempt from the Act's provisions. This argument is based on Section 39-5-40, which provides in part:

Nothing in this Article shall apply to
(a) Actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State Law.

Mid Carolina asserts the exemption applies because mobile home dealers are regulated by the South Carolina Manufactured Housing Board.

In *Carr v. United Van Lines, Inc.*, 289 S. C. 194, 345 S. E. (2d) 734 (Ct. App. 1986), this Court held the plaintiffs were barred from recovering under the Act for alleged deceptive language in an interstate carrier's shipping contract because the provisions complained of were either required or permitted by tariffs approved by the Interstate Commerce Commission.

Mid Carolina's conduct in the present case, however, was not "permitted" under state or federal law; in fact it is expressly prohibited by the very regulations Mid Carolina cites.

Regulation 19-425.6, Code of Laws of South Carolina, 1976, authorizes the South Carolina Manufactured Housing Board to deny, revoke, or suspend a mobile home dealer's license for, among other reasons,

D. Willfully defrauding any retail buyer, to the buyer's damage through misrepresentation or misappropriation of funds belonging to the buyer;
E. Employment of fraudulent devices, methods or practices in connection with compliance with the requirements of this act;
F. Having used unfair methods of competition or unfair deceptive acts or practices....

Thus, if the scope of the exemption were a question of first impression, we could only conclude unfair and deceptive acts in connection with the sale of mobile homes are not exempt from the Act because they are not "permitted" actions. Such a conclusion is supported as well by the language of Section

39-5-160, which provides: "The powers and remedies provided by this article shall be cumulative and supplementary to all powers and remedies otherwise provided by law."

Our Supreme Court, however, has already given Section 39-5-40 a broader interpretation. In *State ex rel. McLeod v. Rhoades*, 275 S. C. 104, 267 S. E. (2d) 539 (1980), the Court adopted the view that where the "general activity" in question is subject to .governmental regulation, the exemption provided by Section 39-5-40(a) applies. Thus, the Court held that transactions involving the sale of securities fall within the statutory exemption because they "are regulated by the Securities and Exchange Commission and under the South Carolina Uniform Securities Act" and because "[v]iolation of these regulations subjects an offender to liability." *Id.* at 107, 267 S. E. (2d) at 541.

Since we are bound by *Rhoades*, we are constrained to hold the sale of mobile homes is an activity exempt from the Act because it is subject to regulatory control and the imposition of penalties by the Manufactured Housing Board. We, therefore, reverse the damages awarded to Mrs. Scott for violation of the Act. The only remedy available to Mrs. Scott, or others in her position, is to ask the Supreme Court to reconsider its decision in *Rhoades* or to persuade the General Assembly to amend the Act.

### D.

Finally Mid Carolina argues the trial judge erred in refusing to deliver its requested charges on fraud and mistake.

In order to warrant reversal, the refusal to give a jury charge must be prejudicial to the requesting party. *Giles v. Lanford & Gibson, Inc.*, 285 S. C. 285, 328 S. E. (2d) 916 (Ct. App. 1985). The trial judge directed a verdict against Mrs. Scott on the fraud cause of action before the case was submitted to the jury. Since the issue of fraud was not before the jury, the failure to deliver a charge on fraud could not have been prejudicial. The judge did charge the jury on fraudulent intent and fraudulent acts in connection with a breach of contract.

Mid Carolina has likewise failed to show how it was prejudiced by the judge's failure to deliver the requested charge on mistake. The charge merely stated the holding in *Hester*

*v. New Amsterdam Casualty Co., supra,* which, as we have already observed, is inapplicable to the facts of this case.

## II.

Mrs. Scott argues the trial judge erred in directing a verdict in Mid Carolina's favor on the fraud cause of action because sufficient evidence of fraud was presented to defeat a motion for directed verdict.

In deciding a motion for directed verdict, the evidence and all reasonable inferences which can be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Stallings v. Ratliff,* 292 S. C. 349, 356 S. E. (2d) 414 (Ct. App. 1987). At trial Mrs. Scott asserted the statements by Phillips and Hardwick that she could purchase the mobile home for $5,600.00 constituted actionable fraud. Even viewed in the light most favorable to Mrs. Scott, the evidence fails to support her claim. A fraudulent representation must relate to a present or pre-existing fact and cannot ordinarily be based on unfulfilled promises or statements as to future events. *Emerson v. Powell,* 283 S. C. 293, 321 S. E. (2d) 629 (Ct. App. 1984). Thus, a promise to perform in the future will not constitute actionable fraud unless the promisor, at the time of the promise, has no intention of performing. *Davis v. Upton,* 250 S. C. 288, 157 S. E. (2d) 567 (1967). As Mrs. Scott failed to present any evidence showing Phillips and Hardwick had a present intention not to sell her the mobile home for the lower price at the time they quoted it to her, we hold the trial judge properly granted Mid Carolina's motion for directed verdict.

Mrs. Scott also appeals the judge's decisions on treble damages and the amount of attorney's fees under the Unfair Trade Practices Act. Since we hold the sale of mobile homes is exempt from the provisions of the Act we need not address those issues.

Affirmed in part; reversed in part.

SANDERS, C. J., and GARDNER, J., concur.