725 S.E.2d 501

**Adrienne HENNES, Respondent,**

v.

**John SHAW, Appellant.**

**No. 4948.**

Court of Appeals of South Carolina.

Heard Nov. 15, 2011.

Decided Feb. 29, 2012.

394

Candy M. Kern–Fuller, of Easley, for Appellant.

Ralph L. Gleaton, II, of Greenville, for Respondent.

WILLIAMS, J.

This appeal stems from a previously-litigated dispute between two upstate realtors over the sale and commission of a parcel of real estate on Lake Keowee. John Shaw (Mr. Shaw) claims the circuit court committed reversible error when it denied his motion for directed verdict on Adrienne Hennes' (Ms. Hennes) claim for breach of contract and when it granted Ms. Hennes' motion for directed verdict on Mr. Shaw's claim for violation of the South Carolina Unfair Trade Practices Act (UTPA). Mr. Shaw also contends the circuit court erred in excluding evidence of attorney's fees he incurred from the prior related litigation with Ms. Hennes. He argues the fees were an element of damages in his tortious interference with a contract claim against Ms. Hennes in the current litigation. Finally, Mr. Shaw claims the circuit court erred when it sua sponte charged the jury on conversion. We affirm in part, reverse in part, and remand in part.

## FACTS

Ms. Hennes and Mr. Shaw are licensed realtors in the upstate of South Carolina. The parties first met in April 2005 and decided to co-list approximately nine or ten real estate

properties in both the commercial and residential sectors. According to Mr. Shaw, the parties' relationship began to deteriorate at the end of 2005 when Ms. Hennes systematically replaced his contracts on properties with those of her own, specifically a contract for the purchase of a piece of property on Lake Keowee (the Pelfrey Property). The owners of the Pelfrey Property brought a declaratory judgment action to determine whether Mr. Shaw's or Ms. Hennes' contract was the superior contract for purposes of purchasing the owners' property. After a bench trial, the master-in-equity issued an order dated March 7, 2007, in which it held that Mr. Shaw had a fully enforceable contract to purchase the Pelfrey Property for $460,000.

Subsequent to Mr. Shaw's purchase of the Pelfrey Property, Ms. Hennes filed suit against Mr. Shaw in circuit court alleging Mr. Shaw breached a loan agreement between the parties and owed Ms. Hennes $27,662.15. In response, Mr. Shaw answered and counterclaimed against Ms. Hennes, asserting claims for tortious interference with contract, violation of the UTPA, fraud, conspiracy, and breach of fiduciary duty. During trial, Ms. Hennes claimed she issued three checks to Mr. Shaw in the amounts of $20,000, $3,800, and $3,862.15 in anticipation of them "working together to expand real estate." To the contrary, Mr. Shaw testified Ms. Hennes endorsed three checks in those amounts to him as a partial advance for commissions on properties they had co-listed. Once their relationship began to deteriorate, Ms. Hennes testified she requested Mr. Shaw return the money she gave to him for "the expansion of real estate" because the money was not a gift. Despite these requests, Ms. Hennes claimed Mr. Shaw refused to return the money, which prompted the present suit. In contrast, Mr. Shaw claimed he was entitled to keep these monies because Ms. Hennes and her realty company solely received the remainder of the commissions on several of the properties they co-listed.

At the conclusion of Mr. Shaw's case, the court directed a verdict in favor of Ms. Hennes on Mr. Shaw's claims for unfair trade practices and fraud. Mr. Shaw conceded his breach of contract claim against Ms. Hennes, but Ms. Hennes maintained her sole claim for breach of contract against Mr. Shaw. Mr. Shaw's remaining claims for tortious interference with

contract, conspiracy, and breach of fiduciary duty went to the jury. At the conclusion of closing arguments, the court charged the jury on conversion, tortious interference with contract, conspiracy, and breach of fiduciary duty. The circuit court, however, failed to charge breach of contract to the jury.

The jury charge on conversion, which is before this court on appeal, was as follows:

Now, the plaintiff alleges that defendant assumed and exercised an unauthorized right of ownership or dominion over personal property belonging to the plaintiff to the exclusion of the owner's rights. This may arise by some illegal use or misuse or by illegal detention of another's personal property. It is a wrongful act which may arise from either a wrongful taking or a wrongful detention. It cannot arise from the defendant's exercise of a legal right over property. Any act of the defendant inconsistent with the plaintiff's right of possession or subversive of her right to the property is conversion. The gist of conversion is the interference with control of the property. To recover in an action for conversion, the plaintiff must prove by the preponderance or greater weight of the evidence an interest by the plaintiff in the thing converted, the defendant converted the property to his own use and that the use was without the plaintiff's permission.

As soon as the jury exited the courtroom, Mr. Shaw objected to the jury charge on conversion on two grounds, stating, "[Ms. Hennes] never moved to amend under Rule 15(b) to add conversion. Their cause of action was breach of contract. I never hear [sic] the court instruct the jury that ... [Ms. Hennes] must show that [Mr. Shaw] did this without [Ms. Hennes'] permission...." The circuit court overruled Mr. Shaw's objection and stated,

I think that I did charge without permission, wrongful detention. It's noted. I looked very carefully [at] plaintiff's claim or cause of action, and although it uses the word "loan agreement," he does not allege a contract that was given according to a contract [sic]. And the law of conversion really is nothing more than the wrongful detention of someone else's property when requested that it be returned. So

I note your objection and request and I deny it for the record.

The jury subsequently returned a verdict for Ms. Hennes in the amount of $27,662.15 and a verdict for Mr. Shaw in the amount of $8,750.[1] Mr. Shaw moved for additur to his verdict based on the attorney's fees incurred in litigating his claim against Ms. Hennes in the previous action. Mr. Shaw also moved for judgment notwithstanding the verdict on the conversion claim. The court permitted ten days for the filing of post-trial motions. On December 12, 2008, the circuit court formally denied Mr. Shaw's motion for JNOV and new trial nisi additur as well as Ms. Hennes' motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. This appeal followed.

## LAW/ANALYSIS

### I. Directed Verdict

When reviewing a motion for directed verdict or judgment notwithstanding the verdict, the appellate court applies the same standard as the circuit court. *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). Accordingly, "[i]n deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party." *Minter v. GOCT, Inc.*, 322 S.C. 525, 527, 473 S.E.2d 67, 69 (Ct.App.1996). "If more than one inference can be drawn from the evidence, the case must be submitted to the jury." *Id.* Moreover, in reviewing a circuit court's grant or denial of a motion for directed verdict or JNOV, this court reverses only when there is no evidence to support the ruling or when the ruling is governed by an error of law. *Austin v. Stokes–Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010) (internal citation omitted).

### 1. Breach of Contract

First, Mr. Shaw claims the circuit court erred in denying his directed verdict motion on Ms. Hennes' breach of contract claim. We disagree.

---

1. The $8,750 figure represented half the commission for the sale of two properties co-listed by Ms. Hennes and Mr. Shaw.

 The necessary elements of a contract are offer, acceptance, and valuable consideration. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003). Valuable consideration may consist of "some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct.App.1998). With certain exceptions, a contract need not be in writing to be enforceable. *Gaskins v. Firemen's Ins. Co. of Newark, N. J.*, 206 S.C. 213, 216, 33 S.E.2d 498, 499 (1945) (noting that if there is a meeting of the minds with regard to the essential elements of a contract, it is immaterial whether the contract is written or oral). To recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).

Viewing the evidence in the light most favorable to Ms. Hennes, we find conflicting evidence exists on whether a contract was formed, and thus, the circuit court properly denied Mr. Shaw's motion for a directed verdict on Ms. Hennes' breach of contract claim. Mr. Shaw maintained the parties did not have a "loan agreement," and Ms. Hennes was not entitled to a return of the money because the checks, which Mr. Shaw deposited into his business banking account, were an advance for commissions on the nine or ten properties they co-listed together. Despite the absence of a written contract, both parties' testimony indicates the checks were not a gift, but rather were given to Mr. Shaw as part of their agreement to buy and sell real estate together. We find the checks constituted valuable consideration in that they created a benefit to Mr. Shaw and a detriment to Ms. Hennes. *See Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S.C. 161, 167, 101 S.E.2d 486, 489 (1957) ("[A] benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract."). Because the evidence as to the existence of an oral contract conflicted, we find the circuit court properly denied Mr. Shaw's directed verdict motion. *See Hendricks v. Clemson Univ.*, 353 S.C. 449, 459, 578 S.E.2d 711, 716 (2003) (holding that if the evidence as to the existence of a contract is

conflicting or raises more than one reasonable inference, the issue should be submitted to the jury).

## 2. The UTPA

■■ Next, Mr. Shaw claims the circuit court erred in directing a verdict on his unfair trade practices cause of action based on the regulated industries exemption in the UTPA. In response, Ms. Hennes claims that even if the circuit court erred in relying on this exemption, Mr. Shaw failed to demonstrate Ms. Hennes' actions adversely affected the public interest. We agree with Ms. Hennes.

An action for damages may be brought under the UTPA for "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce. S.C.Code Ann. § 39–5–20(a) (Supp.2010). A party's ability to bring suit under the UTPA is limited, however, by section 39–5–40 of the South Carolina Code (Supp.2010). Subsection (a) provides the UTPA does not apply to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina state law." § 39–5–40(a).

The supreme court expounded on the breadth of subsection (a) in the case of *Ward v. Dick Dyer & Assoc., Inc.,* 304 S.C. 152, 403 S.E.2d 310 (1991). In *Ward,* the supreme court determined whether buyers could bring an unfair trade practice claim against a car dealership for its alleged failure to disclose to the buyers that the car they purchased had been previously involved in an accident. *Id.* at 153–54, 403 S.E.2d at 311. In finding the buyers could bring an action against the car dealership, despite its regulation by a South Carolina regulatory agency, the court held "the exemption is intended to exclude those actions or transactions which are *allowed or authorized* by regulatory agencies or other statutes." *Id.* at 155, 403 S.E.2d at 312 (emphasis added). Finding the reasoning persuasive and applicable to our statutory exemption, the supreme court cited language from *Skinner v. Steele,* 730 S.W.2d 335, 337 (Tenn.App.1987):

The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the [UTPA] when it does something required by law, or does something that would

otherwise be a violation of the [UTPA], but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the [UTPA]'s coverage every activity that is authorized or regulated by another statute or agency.

*Id.* at 156, 403 S.E.2d at 312.

In support of Mr. Shaw's claim that Ms. Hennes violated the UTPA, he produced evidence that Ms. Hennes repeatedly replaced his contracts with her own contracts and excluded him from commissions to which he otherwise would have been entitled. At the close of evidence, the circuit court granted Ms. Hennes' motion for a directed verdict on Mr. Shaw's unfair trade practices claim. The majority of the colloquy between the parties and the circuit court regarding this particular ruling was omitted in the record on appeal, but the circuit court cited *Scott v. Mid Carolina Homes, Inc.*, 293 S.C. 191, 359 S.E.2d 291 (Ct.App.1987), in support of its decision.[2] While the circuit court acknowledged *Scott* had been overruled, it concluded it was "still good law as far as where the individual is a licensed realtor, and their action is premised on that." Although Ms. Hennes states in her brief that "cooperation with other real estate professionals and sub agency is permitted" under section 40–57–137 of the South Carolina Code (2011), she fails to specifically argue how the Department of Labor, Licensing, and Regulation specifically allowed or authorized her actions. Accordingly, we find the circuit court improperly relied on *Scott,* and furthermore, we find the regulated industries exemption from section 39–5–40(a) is inapplicable.

Despite the circuit court's error in relying on the regulated industries exemption, Mr. Shaw failed to present any evidence that Ms. Hennes' actions caused public harm, which is required for a viable claim under the UTPA. *See Columbia E. Assoc. v. Bi–Lo, Inc.*, 299 S.C. 515, 522, 386 S.E.2d 259, 263 (Ct.App.1989) ("To be actionable under the [UTPA], an unfair or deceptive act or practice must have an impact upon the

---

2. In *Scott,* the court of appeals held that the regulation of a mobile home seller by the manufactured housing board exempted the seller from liability under the UTPA. *Id.* at 201, 359 S.E.2d at 297. This holding was later overruled in *Ward v. Dick Dyer & Assoc., Inc.*, 304 S.C. 152, 403 S.E.2d 310 (1991).

public interest. The [UTPA] is not available to redress a private wrong when the public interest is unaffected."). The record on appeal fails to show Mr. Shaw introduced any evidence prior to Ms. Hennes' directed verdict motion to prove that her actions impacted the public interest. Furthermore, as the appellant, Mr. Shaw has the burden to include evidence in the record on appeal to support his claim. *See Bonaparte v. Floyd,* 291 S.C. 427, 444, 354 S.E.2d 40, 50 (Ct.App.1987) (declining to address appellant's claim of error because appellant failed to furnish this court with a sufficient record on appeal to permit consideration of the issue). Without the inclusion of the circuit court's complete ruling on this issue or any testimony or evidence from trial to show Ms. Hennes' conduct was actionable under the UTPA, we decline to reverse the circuit court's ruling on this issue. *See Sweatt v. Norman,* 283 S.C. 443, 448, 322 S.E.2d 478, 481 (Ct.App.1984) (finding defendant, as appealing party, has the burden of furnishing a sufficient record from which this court can make an intelligent review). Thus, we affirm the circuit court's decision to grant a directed verdict on the UTPA cause of action.

## II. Jury Charge on Conversion

■ Mr. Shaw contends the circuit court committed reversible error when it sua sponte charged the jury on conversion. In response, Ms. Hennes contends this issue is not preserved because Mr. Shaw failed to request a continuance after the charge as required by Rule 15(b), SCRCP. We agree with Mr. Shaw.

■ In reviewing an alleged error in jury instructions, we are mindful that an appellate court will not reverse the circuit court's decision absent an abuse of discretion. *See Cole v. Raut,* 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008) (applying an abuse of discretion standard of review to an alleged error in jury instructions). In reviewing jury charges for error, the appellate court must consider the circuit court's jury charge as a whole in light of the evidence and issues presented at trial. *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000). If the charges are reasonably free from error, isolated portions that might be misleading do not constitute reversible error. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999).

 Mr. Shaw's claim of error stems from the circuit court's jury charge on conversion. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003) (internal citation omitted). To establish the tort of conversion, the plaintiff must establish either title to or right to the possession of the personal property. *Id.*

 Although Ms. Hennes contends Mr. Shaw did not properly preserve this issue for appeal because Mr. Shaw failed to request a continuance under Rule 15(b), we find Rule 15(b) does not apply in this instance.[3] Pursuant to Rule 15(b), SCRCP,

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings ... may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.... [T]he court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall upon motion grant a continuance reasonably necessary to enable the objecting party to meet such evidence.

First, the record does not reflect the parties expressly consented to try the issue of conversion. *See* Rule 15(b),

---

3. Ms. Hennes also makes a cursory assertion that Mr. Shaw failed to timely object to the circuit court's jury charge. We disagree and find that Mr. Shaw's counsel timely objected to the charge outside the jury's presence pursuant to Rule 51, SCRCP, which states, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

SCRCP (stating issues impliedly or expressly tried by consent are treated as if raised in the pleadings). Second, Mr. Shaw's objection after the circuit court charged the jury on conversion demonstrates there was no implied consent to try this cause of action. *See Dunbar v. Carlson,* 341 S.C. 261, 267, 533 S.E.2d 913, 917 (Ct.App.2000) (internal citation and emphasis omitted) ("[T]his Court will not find implied consent to try an issue if all of the parties did not recognize it as an issue during trial, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment."). Third, Ms. Hennes did not make a motion to amend the pleadings during the trial or even after judgment, despite Mr. Shaw's objection to the jury charge. *See* Rule 15(b), SCRCP ("Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment[.]"). Thus, this argument has no merit.

In the alternative, Ms. Hennes argues Mr. Shaw was not prejudiced because Mr. Shaw was on notice of a cause of action for conversion based on the language of the complaint. We disagree.

In Ms. Hennes' one-page complaint, she alleged the following: Ms. Hennes loaned Mr. Shaw $27,622.15; Ms. Hennes demanded payment; Mr. Shaw failed to make payment; and his actions were in breach of their loan agreement, which entitled her to damages for Mr. Shaw's "breach of the contract." We find the language in the complaint does not sufficiently place Mr. Shaw on notice of a claim for conversion as it specifically categorized the action as a "breach of contract." While a conversion action may lie when the plaintiff shows unauthorized detention of property, after demand, we find the complaint failed to sufficiently flesh out the requisite facts to support a conversion claim. *See Mackela v. Bentley,* 365 S.C. 44, 48, 614 S.E.2d 648, 650 (Ct.App.2005) ("A plaintiff claiming conversion may prevail based upon a showing of unauthorized detention of property, after demand."). Further, during trial and closing arguments, both parties only discussed Ms. Hennes' claim against Mr. Shaw in the context of breach of contract. Moreover, the circuit court charged conversion without notifying the parties that it would issue

this charge, despite Mr. Shaw's request to review the charges.[4]

In conclusion, the circuit court's sua sponte jury charge prejudiced Mr. Shaw because he was deprived of the opportunity to prepare for the issue of conversion and to raise the appropriate affirmative defenses at trial. *See Armstrong v. Collins*, 366 S.C. 204, 230, 621 S.E.2d 368, 381 (Ct.App.2005) ("In considering potential prejudice, the court should consider whether the opposing party has had the opportunity to prepare for the issue now being formally raised."). Because this was Ms. Hennes' only cause of action against Mr. Shaw, and the jury returned a verdict against Mr. Shaw, the jury undoubtedly was influenced by this flawed jury instruction. *See Ellison v. Simmons*, 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961) (finding an erroneous jury instruction is not grounds for reversal unless the appellant can show prejudice from the erroneous instruction). Accordingly, we reverse and remand.[5]

## CONCLUSION

Based on the foregoing, we affirm the circuit court's decision to grant Ms. Hennes' motion for a directed verdict on Mr. Shaw's UTPA cause of action. We affirm the circuit court's decision to deny Mr. Shaw's motion for a directed verdict on Ms. Hennes' breach of contract cause of action. However, the circuit court erred in sua sponte charging the jury on conversion. Therefore, we reverse and remand for a new trial on the remaining causes of action: breach of contract, tortious interference with contract, conspiracy, and breach of fiduciary duty.

Accordingly, the circuit court's decision is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

SHORT and GEATHERS, JJ., concur.

---

4. In response to Mr. Shaw's request, the circuit court stated, "Well, I'm not going to let you look over the charge. I'll tell you what it is. You can take the exceptions to it after it's charged."

5. In light of our disposition on this issue, we decline to address Mr. Shaw's remaining arguments. *See Futch v. McAllister Towing Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address additional issues when one issue is dispositive).