736 S.E.2d 867

T. Patrick BROYHILL, Respondent/Appellant,

v.

RESOLUTION MANAGEMENT CONSULTANTS, INC., Gerard P. O'Keefe, Jeffrey B. Kozek, and Thomas Cummings, Defendants,

Of whom Resolution Management Consultants, Inc. is Appellant/Respondent,

and

Gerard P. O'Keefe and Jeffrey B. Kozek are Respondents.

Appellate Case No. 2010–154106.

No. 5063.

Court of Appeals of South Carolina.

Heard May 22, 2012.

Decided Dec. 12, 2012.

Stanley E. Barnett, Smith, Bundy, Bybee, & Barnett, PC, of Mount Pleasant, for Respondent/Appellant.

John J. Pringle, Jr., Ellis, Lawhorne & Sims, PA, of Columbia, and John T. Lay, Jr., Gallivan, White & Boyd, PA, of

Columbia, for Appellant/Respondent and Respondent Jeffery B. Kozek.

Julius H. Hines, Womble Carlyle Sandridge & Rice, LLP, of Charleston, for Respondent Gerard P. O'Keefe.

FEW, C.J.

This cross-appeal arises out of a trial in which a jury returned a verdict in favor of Patrick Broyhill against Resolution Management Consultants, Inc. (RMC) for malicious prosecution. RMC argues the trial court gave an erroneous jury instruction and erred in only partially granting its motion for directed verdict. Broyhill argues the trial court erred in directing a verdict in favor of RMC's corporate officers on his claim for malicious prosecution, and in directing a verdict for all defendants on his civil conspiracy claim. We affirm on all issues except RMC's claim that the trial court erred in charging the jury. We reverse the judgment against RMC and remand for a new trial.

## I. Facts and Procedural History

RMC provides various consulting services, including project management, dispute resolution, and litigation support. Gerard O'Keefe, Jeffrey Kozek, and Thomas Cummings were officers of RMC during the time relevant to this appeal. Broyhill worked for RMC from 1999 until 2002. During that time, Broyhill acted as project manager on all work RMC performed for ENSCO International, Inc. Among other things, he prepared RMC's cost proposals for ENSCO projects.

Broyhill's employment contract provided that for a period of one year after Broyhill left RMC, he would not "solicit or accept any business ... relating to existing [RMC] projects, or ... relating to potential work from existing or prospective clients." If Broyhill violated that clause, the contract required him to pay RMC 25% of the fees invoiced to the client.

In 2002, RMC closed the office Broyhill managed due to insufficient profits. After that, Broyhill worked for RMC out of his home. According to Broyhill, Cummings told him that RMC was taking him off of the company's profit-sharing plan and demoting him to senior consultant.

Broyhill resigned in December 2002. Before his last day, he reformatted his company computer and reinstalled its software, thereby erasing all the data on its hard drive. Broyhill testified he did this as a courtesy to RMC and the next user of the computer.

The following February, he joined a competing company called JMI Solutions. Around that time, JMI submitted proposals to ENSCO on two projects on which RMC had also bid. ENSCO awarded one of the projects to JMI and the other to RMC. RMC soon learned Broyhill was working for JMI on its ENSCO project. According to RMC, its officers believed this violated the employment contract and Broyhill was obligated to pay RMC 25% of the fees that JMI invoiced to ENSCO. According to Broyhill, however, Cummings told him back in 2002 that his demotion voided the contract.

RMC also discovered that while Broyhill was still an RMC employee, he used his personal email account to send a document containing financial information about RMC to the personal email account of another RMC employee. According to RMC, neither Broyhill nor the other employee was authorized to have that information. However, Broyhill testified he created the document using information Cummings provided to him, and the information concerned the financial performance of the office Broyhill managed.

Finally, RMC contends that after it reviewed its ENSCO files, it believed that Broyhill had taken other documents relating to ENSCO, such as seminar materials and rate sheets. Broyhill disputes that RMC had any evidentiary basis for that belief, pointing out that O'Keefe testified RMC "didn't know what [Broyhill] kept back .... We never saw them."

After talking with each other and counsel, O'Keefe, Kozek, and Cummings decided RMC should sue Broyhill. RMC filed an action for conversion, civil conspiracy, intentional interference with prospective contractual relations, and breach of his employment contract. In the discovery phase, RMC did not attempt to contact ENSCO or JMI to obtain proof that Broyhill had done the things RMC alleged. Additionally, RMC did not produce any projections of damages relating to its claims for conversion, civil conspiracy, or interference with prospective contractual relations. Later, O'Keefe testified

"our damages have always been under [Broyhill's employment] agreement." RMC never identified any of the reference materials or project files that it alleged Broyhill took from the company.

Broyhill filed a motion for summary judgment in RMC's case against him. At the summary judgment hearing, RMC voluntarily dismissed all of its causes of action except for breach of contract. The circuit court denied Broyhill's motion for summary judgment on the breach of contract claim. The case was later tried non-jury before a master-in-equity, who found for Broyhill.

Broyhill then filed this action for malicious prosecution and civil conspiracy. At trial, the defendants moved for a directed verdict. The trial court directed a verdict for all four defendants on the civil conspiracy claim. As to the malicious prosecution claim, the court directed a verdict for O'Keefe, Kozek, and Cummings, but not for RMC. The jury returned a verdict against RMC and awarded Broyhill $291,000.00 in damages.

## II. RMC's Appeal

### A. Denial of Motion for Directed Verdict

RMC argues the trial court should have directed a verdict in its favor on Broyhill's malicious prosecution cause of action. We must affirm a trial court's denial of a motion for directed verdict unless we determine that the jury could not reasonably find in favor of the party opposing the motion. "When reviewing the trial court's ruling on a motion for a directed verdict ..., this Court must apply the same standard as the trial court...." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 171 (2012). Viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party, "[t]he trial court must deny a motion for a directed verdict ... if the evidence yields more than one reasonable inference." 399 S.C. at 331–32, 732 S.E.2d at 171; *see also Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006) ("If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury."). On appeal from an order denying a motion for directed verdict, therefore, "we

must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor." *Goodwin v. Kennedy,* 347 S.C. 30, 38, 552 S.E.2d 319, 323 (Ct.App.2001) (citation omitted); *see also Martasin v. Hilton Head Health Sys., L.P.,* 364 S.C. 430, 440, 613 S.E.2d 795, 801 (Ct.App.2005) (reversing directed verdict for two defendants where a jury could reasonably have found for the plaintiff against them); 364 S.C. at 437, 442, 613 S.E.2d at 799, 802 (affirming directed verdict for another defendant where there was not sufficient evidence upon which a jury could reasonably "conclude the alleged negligent acts or omissions . . . proximately caused Mr. Martisan's death"). In other words, if there is sufficient evidence upon which the jury could reasonably find for Broyhill on his claim for malicious prosecution against RMC, we must affirm the trial court's decision to deny RMC's motion for directed verdict.

To recover in a malicious prosecution action, the plaintiff must prove the following elements: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *Ruff v. Eckerds Drugs, Inc.,* 265 S.C. 563, 566, 220 S.E.2d 649, 651 (1975). RMC argues Broyhill failed to produce any evidence of lack of probable cause or malice. We disagree. The record contains evidence which, if believed by the jury, would reasonably support a verdict that RMC lacked probable cause for each of its causes of action against Broyhill. Further, because malice may be inferred from evidence of lack of probable cause, *Parrott v. Plowden Motor Co.,* 246 S.C. 318, 322, 143 S.E.2d 607, 609 (1965), there was evidence from which the jury could draw an inference of malice.

RMC also claims the fact that summary judgment was denied on its breach of contract claim against Broyhill establishes the existence of probable cause of a breach of contract as a matter of law. On these facts, we disagree. RMC's evidence that Broyhill worked on an ENSCO project after joining JMI and received fees for that work created a question of fact as to whether Broyhill breached the employment contract and owed RMC 25% of the fees. In the malicious

prosecution trial, however, Broyhill presented evidence that Cummings told him the contract was voided by Broyhill's demotion. Therefore, even though evidence regarding Broyhill's work for JMI on the ENSCO project required the denial of summary judgment in RMC's action, evidence that RMC believed the contract was void created a question of fact in Broyhill's action as to whether RMC actually had probable cause, and whether it acted maliciously in suing Broyhill.

Finally, RMC argues Broyhill could not establish lack of probable cause because its officers obtained advice of counsel before suing him. "Good faith reliance upon advice of fully informed counsel may establish probable cause." *Melton v. Williams,* 281 S.C. 182, 186, 314 S.E.2d 612, 615 (Ct.App. 1984). Evidence of a fair, full, and truthful disclosure of all the facts to counsel is necessary to show good faith. *Id.* Although RMC's officers spoke with counsel about what RMC should do with regard to Broyhill, it is not clear what they told their attorneys, or what the attorneys told them. Under these circumstances, the question of whether RMC established the good faith defense was for the jury to answer. We affirm the trial court's decision denying a directed verdict.

## B. Jury Charge

RMC argues the trial court erred in charging the jury on the element of lack of probable cause in a malicious prosecution claim. We agree.

Broyhill could prevail on his malicious prosecution claim only if he established that RMC lacked probable cause as to each of the causes of action it asserted against Broyhill. *See Ruff,* 265 S.C. at 567, 220 S.E.2d at 651 (finding an action for malicious prosecution was not available where the two charges asserted against the plaintiff arose out of the same set of circumstances and the defendant's employee had probable cause to bring one of the charges); *Jackson v. City of Abbeville,* 366 S.C. 662, 669–70, 623 S.E.2d 656, 660–61 (Ct.App. 2005) (affirming summary judgment for city in malicious prosecution action where police officer had probable cause to arrest plaintiff for offense with which the plaintiff was never formally charged). In a charge conference, counsel for RMC stated, "I think what I want the jury to know is that we don't

have to establish probable cause as to every single cause of action. Probable cause as to any one cause of action is sufficient to defeat a claim for malicious prosecution." Under *Ruff* and *Jackson*, what RMC requested is a correct statement of law.

The trial court replied it was going to use its standard jury charge on probable cause. It charged the jury as follows:

[T]he plaintiff must prove that the defendant lacked probable cause in instituting or continuing the action. In determining whether probable cause existed, you should focus on whether the defendant had reasonable cause to believe that the plaintiff committed the acts about which the complaint was made, and not whether the plaintiff was actually guilty or innocent.... If the facts and circumstances will lead a person of ordinary intelligence, caution and prudence, acting conscientiously, fairly and without prejudice to believe that the plaintiff was guilty, that would be probable cause.

 This instruction failed to explain that Broyhill was required to prove RMC lacked probable cause for each of its causes of action, and that a jury finding of probable cause to support any one of RMC's causes of action required a verdict for RMC on Broyhill's malicious prosecution claim. Therefore, the trial court erred in rejecting RMC's requested instruction. *See Clark v. Cantrell*, 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000) ("It is error for the trial court to refuse to give a requested instruction which states a sound principle of law when that principle applies to the case at hand, and the principle is not otherwise included in the charge."). Moreover, the phrase "the acts about which the complaint was made" suggests that RMC had to have probable cause as to *all* of its causes of action, which would mean Broyhill could prevail by showing only that RMC lacked probable cause for any one cause of action. In that respect, the court erred by making an incorrect statement of the law. *See id.* (stating "the trial court is required to charge only the current and correct law of South Carolina.").

Broyhill argues that, when considered in context, the jury charge conveyed the point RMC asked the court to make. Broyhill undercuts that argument in his brief, however, by ascribing to the jury charge the very meaning it could not

permissibly have. Broyhill states in his brief: "The jury was charged to consider whether there was probable cause for *all* of the acts about which the complaint was made." (emphasis added)

■ We find the erroneous jury charge prejudiced RMC. The charge permitted the jury to award damages based on a lack of probable cause for any one of the claims RMC asserted against Broyhill, while the law forbids recovery unless Broyhill proved a lack of probable cause for all of them. RMC contended that probable cause existed for all of its claims, but its strongest argument as to probable cause was on the breach of contract claim. The trial court's refusal to give the requested charge therefore prevented RMC from making its strongest probable cause argument. *See State v. Kerr,* 330 S.C. 132, 145, 498 S.E.2d 212, 218 (Ct.App.1998) (to determine whether error regarding jury charge was prejudicial, "our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered"). We reverse and remand for new trial.[1]

### III. Broyhill's Appeal

Broyhill appeals the trial court's decisions to direct a verdict for O'Keefe, Kozek, and Cummings on his claim for malicious prosecution, and for all defendants on his civil conspiracy claim.

■ We find no evidence that would support a verdict for malicious prosecution against O'Keefe, Kozek, or Cummings. All of their actions were taken only in their corporate capacities to recover damages that belonged exclusively to the corporation. In other words, there is no evidence that any of the individual defendants instituted or continued judicial proceedings. *See Ruff,* 265 S.C. at 566, 220 S.E.2d at 651. RMC is the only party that sued Broyhill.

---

1. We do not address the other issues RMC raises on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

■■■■ As to the civil conspiracy claim, "a corporation cannot conspire with itself." *McMillan v. Oconee Mem'l Hosp., Inc.,* 367 S.C. 559, 564, 626 S.E.2d 884, 887 (2006). Because Broyhill presented no evidence that O'Keefe, Kozek, or Cummings acted outside their official capacities as officers of RMC, neither they nor RMC can be liable for civil conspiracy. *See* 367 S.C. at 565, 626 S.E.2d at 887 (2006) ("A civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation."). Therefore, we affirm.

## IV. Conclusion

The decisions of the trial court are **AFFIRMED IN PART AND REVERSED IN PART.** We **REMAND** for a new trial only as to Broyhill's malicious prosecution claim against RMC.

HUFF, J., concurs.

SHORT, J., concurring in part and dissenting in part.

I respectfully dissent because I interpret the learned trial court's jury charge differently than the majority.

The trial court need only charge the current and correct law of South Carolina. *Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Communities, Inc.,* 397 S.C. 348, 362, 725 S.E.2d 112, 120 (Ct.App.2012). "In reviewing an alleged error in jury instructions, we are mindful that an appellate court will not reverse the [trial] court's decision absent an abuse of discretion." *Hennes v. Shaw,* 397 S.C. 391, 402, 725 S.E.2d 501, 507 (Ct.App.2012). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." *Cole v. Raut,* 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008). In our review, this court must consider the trial court's jury charge as a whole in light of the evidence and issues presented at trial. *Hennes,* 397 S.C. at 402, 725 S.E.2d at 507. "A trial court's refusal to give a properly requested charge is reversible error only when the requesting party can demonstrate prejudice from the refusal." *Pittman v. Stevens,* 364 S.C. 337, 340, 613 S.E.2d 378, 380 (2005).

I disagree with the majority's finding that the trial court's language in its charge, "the acts about which the complaint

was made," suggests Broyhill could prevail on his malicious prosecution claim by showing that RMC lacked probable cause for any one cause of action. I find the charge required the jury to consider *all* the four causes of action RMC brought against Broyhill to determine if RMC had probable cause to believe that Broyhill committed any of the acts about which the complaint was made.[2] Furthermore, I find there is no evidence the court's refusal to grant RMC's requested charge resulted in any prejudice to RMC. Like the majority, I agree RMC's strongest argument as to the existence of probable cause was on the breach of contract claim, but there was ample evidence in the record to support a finding of a lack of probable cause. Therefore, I find there was no abuse of discretion resulting in any prejudice to RMC, and I would affirm as to all issues.

---

**2.** RMC's complaint alleged the following causes of action against Broyhill: (1) conversion of trade secrets; (2) conspiracy to injure RMC; (3) interference with RMC's prospective contractual relations; and (4) violation of the non-compete agreement.