**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Federal Logistics, Inc., Respondent,

v.

DMP Construction, LLC, Appellant.

Appellate Case No. 2019-000692

———————

Appeal From Anderson County
R. Lawton McIntosh, Circuit Court Judge

———————

Opinion No. 2023-UP-015
Heard September 14, 2022 – Filed January 11, 2023

———————

**AFFIRMED**

———————

William Norman Epps, III, of Epps & Epps, LLC, of Anderson, for Appellant.

Craig Horger Allen, of Craig H. Allen, P.A., of Greenville, for Respondent.

———————

**PER CURIAM:** In this contract dispute, DMP Construction, LLC (DMP) appeals the trial court's orders (1) granting a directed verdict to Federal Logistics and (2) denying DMP's motion to vacate the judgment or grant a new trial. We affirm.

## FACTS/PROCEDURAL HISTORY

On November 16, 2015, DMP entered into a "Freight Broker Terms and Conditions" agreement (the Agreement) with Federal Logistics and GlobalTranzEnterprises to obtain discounted brokerage and transportation services. The Agreement required DMP to make timely payments on issued discounted invoices, and if payments were not made, Federal Logistics could reissue the invoices at the non-discounted rate.[1]  Further, the Agreement specified that interest on past-due balances would accrue at a rate of 1.5% per month and the customer is liable for costs and reasonable attorney's fees.  Any dispute with an invoice must be made in writing within thirty days or the charges would be conclusively presumed valid.  It is uncontested that DMP utilized Federal Logistics for its discounted freight services, that it filled out the credit application, that the credit application was subject to the terms of the Agreement, that it received several invoices for the services provided, that it never disputed the issued invoices, and that it owed Federal Logistics for the services provided.

Federal Logistics argued the amount owed was the sum of the non-discounted charges and accrued interest of 1.5% per month from May 15, 2016, to the date of trial, totaling $54,377.24.  DMP's central argument is that Federal Logistics's "non-discounted rate" included accrued *daily* interest, rather than *monthly*, and the amount due should be the original discounted rate total of $16,421.28 plus interest of 1.5% per month.

At the conclusion of evidence, both parties moved for a directed verdict.  The trial court found there was no evidence DMP disputed the issued invoices and that DMP failed to elicit testimony showing the balance of $54,377.24 included daily interest.  DMP admitted to signing the Agreement and that it was bound to its terms and conditions.  Thus, the trial court granted Federal Logistics's motion for a directed verdict and awarded it the principal sum of $54,377.24 plus interest of $24,469.50 and reasonable attorney's fees of $8,100.00, totaling $86,946.74.

Post-trial, DMP moved to vacate the judgment and/or grant a new trial, relying on emails produced from Federal Logistics to DMP containing contradictory statements regarding accruing daily interest on DMP's debt.  Specifically, DMP

---

[1] Federal Logistics testified it formulates its discounted rates as part of its negotiation process with carriers due to predicted estimates for services and the business relationship Federal Logistics develops with carriers.  These rates are predicated on timely payment to the carriers.

argued it was able to retrieve two emails from Federal Logistics with attachments regarding the outstanding invoices in which it references the amounts due plus interest of 1.5% *per day*, totaling $39,721.73 as of June 14, 2016, and $51,791.37 as of July 13, 2016. The trial court denied DMP's motion, finding there was still no evidence of any complaints made to Federal Logistics regarding the past-due amounts and that DMP failed to elicit testimony showing the balance of $54,377.24 included daily interest or that any amounts billed to DMP included a calculation of daily interest. This appeal followed.

## STANDARD OF REVIEW

"When reviewing a motion for directed verdict . . . , the appellate court applies the same standard as the circuit court." *Hennes v. Shaw*, 397 S.C. 391, 398, 725 S.E.2d 501, 505 (Ct. App. 2012).

> The rule in South Carolina is that on motions for . . . directed verdict, . . . the evidence and all reasonable inferences which have to be drawn from it must be viewed in a light most favorable to the nonmoving party and if there is any testimony tending to prove allegations of the complaint, the motions must be refused.

*Proctor v. Dep't of Health & Env't Control*, 368 S.C. 279, 293, 628 S.E.2d 496, 504 (Ct. App. 2006). "This rule is especially strong in South Carolina where the 'scintilla of evidence rule' is applied." *Id*. (*quoting Sweatt v. Norman*, 283 S.C. 443, 446, 322 S.E.2d 478, 480 (Ct. App. 1984)). "[H]owever, we cannot ignore facts unfavorable to that party and we must determine whether a verdict for the party opposing the motion would be reasonably possible under the facts." *Hopson v. Clary*, 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct. App. 1996). "If more than one inference can be drawn from the evidence, the case must be submitted to the jury." *Hennes*, 397 S.C. at 398, 725 S.E.2d at 505 (quoting *Minter v. GOCT, Inc.*, 322 S.C. 525, 527, 473 S.E.2d 67, 69 (Ct. App. 1996)). "However, this rule does not authorize submission of speculative, theoretical and hypothetical views to the jury." *Hanahan v. Simpson*, 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997), *superseded on other grounds by statute*, S.C. Code Ann. § 15-36-10(C)(1) (Supp. 2012), *as recognized in Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 758 S.E.2d 483 (2014). "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 408 S.C. 620, 634–35, 760 S.E.2d 399, 406 (2014), *abrogated on other*

*grounds by Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 787 S.E.2d 485 (2016) (quoting *Harvey v. Strickland*, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002)). "Moreover, in reviewing a circuit court's grant or denial of a motion for directed verdict . . . , this court reverses only when there is no evidence to support the ruling or when the ruling is governed by an error of law." *Hennes*, 397 S.C. at 398, 725 S.E.2d at 505.

## LAW/ANALYSIS

DMP relies entirely on Federal Logistics's emails and worksheets to support its argument that Federal Logistics was billing a late interest fee of 1.5% per day. However, these emails and worksheets total $51,791.37 rather than Federal Logistics's requested amount of $54,377.24. Consequently, DMP's argument necessitates a sizeable inference that because the two sums, $54,377.24 and $51,791.37, are relatively close, they were calculated in the same or similar manner (by including impermissible daily interest rather than monthly interest).

However, this conclusion lacks the necessary evidentiary support to create a reasonable inference that impermissible daily interest was, in fact, included in calculating DMP's debt. *See Proctor*, 368 S.C. at 293, 628 S.E.2d at 504. DMP failed to demonstrate (through simple arithmetic) or submit any evidence, other than its arguments and speculation, that Federal Logistics's requested amount of $54,377.24 was calculated by using impermissible daily interest. *See Hanahan*, 326 S.C. at 149, 485 S.E.2d at 908 ("In reviewing a directed verdict, this Court must determine whether a verdict for the party opposing the motion would have been reasonably possible under the facts. . . . However, this rule does not authorize submission of *speculative*, theoretical and hypothetical views to the jury." (citation omitted) (emphasis added)).

Conversely, Federal Logistics provided evidence of invoices and a statement of account disclosing the original discounted amount, the reinvoiced non-discounted amount, and the total remaining balance amounting exactly to $54,377.24. Thus, nothing in the record indicates that more than one reasonable inference can be drawn from the evidence presented. *See Hennes*, 397 S.C. at 398, 725 S.E.2d at 505 ("If more than one inference can be drawn from the evidence, the case must be submitted to the jury . . . this court reverses [a grant of a motion for a directed verdict] only when there is no evidence to support the ruling or when the ruling is governed by an error of law."). DMP admitted to signing the Agreement and was, therefore, bound to its terms requiring it to make timely payments, and if payments were not made, Federal Logistics could reissue the invoices at the non-discounted rate with accruing interest of 1.5%. DMP failed to demonstrate that the balance of

$54,377.24 included daily interest or that any amounts billed to DMP included a calculation of daily interest. Thus, we affirm the trial court's grant of a directed verdict to Federal Logistics.

DMP's motion to vacate the judgment and/or grant a new trial relied solely on the emails produced from Federal Logistics to DMP. Because we affirm the trial court's grant of a directed verdict based upon the lack of any evidence indicating daily interest was included in Federal Logistics's calculation of the amount owed, we find the trial court's decision to deny DMP's motion was not based upon an error of law and its conclusions did not lack evidentiary support. *See BB&T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 502–03 (2006) ("Whether to grant or deny a motion under Rule 60(b) lies within the sound discretion of the judge. [The appellate] standard of review, therefore, is limited to determining whether there was an abuse of discretion. An abuse of discretion arises whe[n] the judge issuing the order was controlled by an error of law or whe[n] the order is based on factual conclusions that are without evidentiary support.").

Based on the foregoing analysis, the trial court is

**AFFIRMED.**

**WILLIAMS, C.J., THOMAS, J., and LOCKEMY, A.J., concur.**