**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Demetrius Mack, Respondent,

v.

Leon Lott, in his Official Capacity as Sheriff of Richland County, Appellant.

Appellate Case No. 2017-001734

———————

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-028
Submitted May 8, 2020 – Filed January 19, 2022

———————

**AFFIRMED**

———————

Andrew F. Lindemann, of Lindemann, Davis & Hughes, PA, of Columbia, and Robert David Garfield, of Crowe LaFave, LLC, of Columbia, both for Appellant.

Neal Michael Lourie, of Lourie Law Firm, LLC, of Columbia, Joshua Snow Kendrick, of Kendrick & Leonard, P.C., of Greenville, and Christopher Shannon Leonard, of Kendrick & Leonard, P.C., of Columbia, all for Respondent.

———————

**PER CURIAM:** This case involves differing interpretations of a grainy police dashcam video, the arrest of a SLED-certified private security guard, and an award to the security guard on his false arrest claim against Appellant Leon Lott, in his official capacity as Sheriff of Richland County.[1] In this second appeal[2] from the $7,500 nonjury verdict, Sheriff Lott argues the circuit court erred in analyzing whether his deputies had probable cause to arrest Respondent Demetrius Mack because the circuit court: (1) failed to consider the evidence from the perspective of an objectively reasonable law enforcement officer on the scene; and (2) failed to rule as a matter of law that an objectively reasonable officer could have perceived or concluded Mack committed simple assault in the public roadway. We affirm the judgment of the circuit court.

**Facts and Procedural History**

On December 6, 2008, Mack, a security guard with DTH Protective Services (DTH) working at Club Essence (the Club) on Two Notch Road, attempted to arrest McKenzie Williamson, who had continuously caused problems at the Club that night. Earlier in the evening—on three separate occasions—Williamson tried to enter the Club without paying the cover charge. Each time, security either asked Williamson to leave or escorted him off the property. Following the third incident, Williamson became belligerent—he stood in the middle of Weir Avenue,[3] threw gang signs at the security guards, and made threatening shooting gestures toward

---

[1] Sheriff Lott is the named defendant pursuant to the requirements of the South Carolina Tort Claims Act. *See* S.C. Code § 15-78-70(c) (2020) (providing a person bringing an action "under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually . . . .").

[2] In the prior appeal, this case was argued before both the court of appeals and the supreme court. The court of appeals remanded the matter to the circuit court for additional findings; however, the supreme court granted Sheriff Lott's petition for a writ of certiorari. Following oral argument, the supreme court dismissed the writ as improvidently granted. We now decide the case without further argument pursuant to Rule 215, SCACR.

[3] The owner of the Club also owns 109 Weir Avenue, an adjoining property used as a parking lot for the nightclub. This property was within the scope of DTH's security contract.

the Club.  Mack warned Williamson he would arrest him if he caught him on the property again.

Nevertheless, Williamson returned and tried a fourth time to enter the Club without paying.  When Mack approached Williamson, Williamson immediately tried to flee.  Mack gave chase, and during the course of the pursuit toward Weir Avenue, Williamson changed direction to avoid Richland County deputies, hit his face against a parked car, tripped, and fell under a white vehicle parked on the side of the road.  Other bouncers approached to assist Mack, Williamson was pulled from under the parked car, and Mack handcuffed him.  According to Mack, Williamson was "too fast" and the only way Mack caught him was because he fell.

Deputies James Gore and Kenneth Proffitt of the Richland County Sheriff's Department were responding to an unrelated narcotics incident near the 100 block of Weir Avenue when they observed a man running from the Club's parking lot into the road, with another man chasing him.  Although in an earlier interview describing the incident, Gore did not report he witnessed Mack tackle Williamson, Gore testified in his deposition and at trial that he saw Mack tackle Williamson in the road.  While he "actually didn't see the metal bracelets go on," Gore observed "what appeared to be motions of somebody being handcuffed."  Proffitt claimed to witness these events as well, noting he was approximately two hundred feet from the incident when he called for backup.[4]

After Williamson was in handcuffs, one of the Club's bouncers flagged down Deputy Parish, who was responding to another incident on Weir Avenue.  Mack told Parish that Williamson had attempted to sneak in, threw up gang signs, and made threatening shooting gestures.  Mack reported that he wanted the deputies to put Williamson on trespass notice so he could be arrested if tried to return to the Club.

Deputy Gore then intervened and asked Mack whether he intended to press charges against Williamson.  Mack replied he did not—he simply wanted Williamson put on trespass notice.  At the civil trial, Mack testified that immediately following this exchange, Gore changed his tone, interjecting that he and the rest of the Sheriff's

---

[4] Although Deputies Gore and Proffitt both testified at the civil trial that they witnessed Mack tackle Williamson, the deputy who initially made contact with Mack, Stacy Parish, did not include this information in her incident report.  Deputy Parish's dashboard camera captured the footage of Williamson in flight.

Office were tired of private security guards not showing up for court hearings. Gore asked Mack why he continued to chase Williamson even after he was off the Club's property and advised him that pursuant to section 40-18-110 of the South Carolina Code (2011), the powers of a person certified as a private security officer are confined to the property on which the private guard is employed. He then turned to Williamson, whom Gore noted had sustained injuries to his hands and face and had blood "all over his shirt," and asked him if he wished to press charges against Mack. Williamson responded that that he did, and Gore arrested Mack for simple assault, claiming the security guard was beyond his jurisdiction when he handcuffed Williamson. Williamson failed to appear in court, and Mack was found not guilty on the simple assault charge.

Mack subsequently filed this civil action against Sheriff Lott, alleging false arrest/imprisonment, negligence, gross negligence, negligent training, and assault and battery.[5] After a bench trial, the circuit court entered judgment in favor of Mack, awarding him $7,500 in actual damages. The circuit court found that "based on the exhibits, and testimony before this Court, Defendant did not have probable cause to arrest the Plaintiff for simple assault." The court subsequently denied Sheriff Lott's motion to alter or amend the judgment.

Sheriff Lott filed a timely appeal to this court, which remanded the case to the circuit court. *See Mack v. Lott*, 410 S.C. 28, 762 S.E.2d 719 (Ct. App. 2014), *superseded by* 415 S.C. 22, 780 S.E.2d 761 (2015). This court concluded the "trial court's findings of fact [were] insufficient under Rule 52(a)," and remanded "for more detailed findings as to whether Mack met his burden of proving Gore did not have probable cause to arrest him." Sheriff Lott petitioned for rehearing, which this court denied.

Thereafter, Sheriff Lott filed a petition for a writ of certiorari, which our supreme court ultimately dismissed as improvidently granted "since both parties and the trial court agree that the proper standard for determining probable cause is an objective standard; that is, whether the facts known to the arresting officer at the time of the arrest, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 23, 780 S.E.2d at 761.

---

[5] With the exception of the false arrest/imprisonment claim, all causes of action were voluntarily dismissed before trial.

On remand, and following another hearing, the circuit court issued a written order, again setting forth findings of fact and conclusions of law and confirming its $7,500 judgment in favor of Mack. The circuit court stated, *inter alia*:

> The dashcam video of the incident is not determinative of whether the incident took place on private property or in the road. This is consistent with the opinions from the Court of Appeals and the Supreme Court. Defendant asked both of those courts to find the video indisputable and rule there was probable cause as a matter of law. Both courts declined to make that finding.
>
> Based on these Findings of Fact and Conclusions of Law, this Court enters the following order:
>
> This Court rules that the Defendant did not have probable cause to arrest Plaintiff. Defendant falsely arrested Plaintiff and is liable for damages to the Plaintiff. This Court does not disturb its prior ruling awarding damages in favor of Plaintiff.

## Law and Analysis

"In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law. The Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Miller Constr. Co., LLC v. PC Constr. of Greenwood, Inc.*, 418 S.C. 186, 195, 791 S.E.2d 321, 326 (Ct. App. 2016) (quoting *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009)).

## I.    Probable Cause

Sheriff Lott argues the circuit court erred in its analysis of probable cause by failing to consider the evidence from the perspective of an objectively reasonable officer on the scene. We disagree.

In *Maryland v. Pringle*, the United States Supreme Court explained that "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' and that the belief of guilt must be particularized with respect to the person to be searched or seized." 540 U.S. 366, 371 (2003) (quoting *Illinois v.*

*Gates*, 462 U.S. 213, 232 (1983)). The Court further stated that "[t]o determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (quoting *Orleans v. United States*, 517 U.S. 690, 696 (1996)); *see also Robinson v. State*, 407 S.C. 169, 190 n. 11, 754 S.E.2d 862, 873 n. 11 (2014) ("Probable cause to arrest depends upon whether, at the moment the arrest was made . . . the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information was sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." (quoting *Adams v. Williams*, 407 U.S. 143, 148 (1972))).

Here, both parties agree that whether Mack was within his jurisdiction at the time he detained Williamson is significant to the probable cause determination. If Mack was not within his jurisdiction, he arguably illegally detained Williamson; however, if he was within his jurisdiction (i.e., on the private property owned by the Club as opposed to in the public roadway), his actions were lawful.

After hearing an extensive description of the events from Mack and Richland County deputies, as well as reviewing the dashcam video and other exhibits, the circuit court credited Mack's version of events over that of the deputies. Although Deputy Gore testified he witnessed Mack tackle Williamson in the middle of the public road, the court found Gore's testimony was not credible and his version of events was inconsistent with other evidence presented. By a preponderance of the evidence, the court concluded Gore did not actually see Mack tackle Williamson in the road.

Despite his later sworn testimony to the contrary, Deputy Gore admitted as much in a January 2, 2009 statement, in which he did not say he witnessed Mack "tackle" Williamson to the ground. Instead, Gore said "he observed a male subject running from another male subject and into the street" and "the first subject ended up on the ground with the second subject on top of him." Gore then went down the street to find out what was going on "and realized the security guard had chased a trespasser off the property and out into the roadway." Gore further noted the trespasser had received injuries to his face and hands "as a result of being tackled in the roadway." At that time, Gore stated "Mr. Mack was arrested because he was outside of his jurisdiction when Mr. Mack 'arrested' the subject." The circuit court noted that the first time Gore claimed he witnessed Mack tackle Williamson in the middle of the street was at his deposition in 2011. Additionally, the incident report—completed by Deputy Parish—states Mack was arrested because he made

an arrest on property adjoining the Club; it makes no mention of Mack "tackling" Williamson in the road. And when she gave her 2009 statement, Parish reported "the subject [Williamson] was half in the grass with his legs in the roadway, seated in front of a white vehicle." At trial, Parish testified the white car was parked "primarily" in the roadway.

In our view, neither the photographs nor the dashcam video definitively establish where the car was parked or where Williamson's fall took place. The circuit court found:

> There is a still photograph from the video and another picture showing the border between the road and the grass in the daylight. While the pictures are not entirely clear, the car appears to be primarily parked in the grass, contrary to Deputy Parish's testimony. Comparing both pictures, and using the light pole in the background as a reference point, the preponderance of the evidence suggests Williamson was not tackled or arrested in the roadway.

Evidence supports the circuit court's determination that the facts available to Deputy Gore, viewed "from the standpoint of an objectively reasonable police officer," did not provide probable cause for Gore to arrest Mack for simple assault. As the circuit court explained, "[t]he only objective information [Gore] possessed was the statement from [Mack] about the events leading up to Mr. Williamson's arrest. [Mack's] statements did not support probable cause for [Gore] to place him under arrest."

## II.   Directed Verdict

Sheriff Lott argues the circuit court erred in failing to rule as a matter of law that an objectively reasonable officer could have perceived or concluded Mack committed simple assault in the public roadway. We disagree.

"On appeal from an order denying a motion for directed verdict . . . 'we must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor." *Broyhill v. Resolution Mgmt. Consultants, Inc.*, 401 S.C. 466, 472–73, 736 S.E.2d 867, 870 (Ct. App. 2012) (quoting *Goodwin v. Kennedy*, 347 S.C. 30, 38, 552 S.E.2d 319, 323 (Ct. App. 2001)); *see also Martasin v. Hilton Head Health Sys., L.P.*, 364 S.C. 430,

440, 613 S.E.2d 795, 801 (Ct. App. 2005) (reversing a directed verdict for two defendants where a jury could reasonably have found for the plaintiff against them); *id.* at 442, 613 S.E.2d at 802 (affirming a directed verdict for another defendant where there was not sufficient evidence upon which a jury could reasonably determine proximate cause in the plaintiff's favor).

Here, Sheriff Lott continues to rely on the dashcam video—presented to every court considering the question of probable cause—as dispositive evidence. However, no court has found the video supports the argued position. The video, which is of poor quality, does not reflect the events leading up to Williamson's arrest. Moreover, the video appears to show the white vehicle described in the testimony is primarily parked in the grass at 109 Weir Avenue, and not on the public road.

Sheriff Lott also argues Williamson's wounds are consistent with "road rash," claiming this supports Deputy Gore's belief that the "assault" occurred in the street. However, Gore never testified Williamson had road rash. The term "road rash" was first used in Sheriff Lott's motion for a directed verdict. In her testimony, Deputy Parish described Williamson's condition as "[b]loody." She stated he "had like scratches and like little pebbles like in his hands and blood was all over his face and his shirt." Williamson's injuries are consistent with Mack's description of Williamson veering to avoid the approaching deputies, running into the parked car, tripping, and then sliding under the car:

> So what I'm telling you is that where he fell at, he fell between those two cars and he fell face-first under that car, in the people's yard. Because he has got dirt, grass, everything on him. And I wasn't dirty at all. So there is no way possible I could tackle him and not get hurt too.

Two versions of the events were presented trial. The circuit court found one version lacked credibility. Regardless, Mack's testimony alone precluded a directed verdict. Because there is evidence—specifically, Mack's testimony, the photographs, and the dashcam video—to support the circuit court's denial of the directed verdict motion as well its skepticism as to the deputies' version of the evening's events, the order of the circuit court is

**AFFIRMED.**

**THOMAS and MCDONALD, JJ., and HUFF, A.J., concur.**