# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Tekayah Hamilton, individually and as parent and guardian ad litem for Robert Lee M. Jr., a minor child under the age of 18, Respondent,

v.

Regional Medical Center, Appellant.

Appellate Case No. 2019-001921

———————

Appeal From Orangeburg County
Edgar W. Dickson, Circuit Court Judge

———————

Opinion No. 6008
Heard December 8, 2022 – Filed August 2, 2023

———————

**AFFIRMED**

———————

Michael C. Tanner, of Michael C. Tanner, LLC, of Bamberg, and Morgan Rebekkah Long, of Michael Tanner, LLC, of Trenton, North Carolina, both for Appellant.

Jonathan F. Krell, of Uricchio Howe Krell Jacobson Toporek Theos & Keith, PA, of Charleston; David Reynolds Williams and Virginia Watson Williams, both of Williams & Williams, of Orangeburg; and Kathleen Chewning Barnes, of Barnes Law Firm, LLC, of Hampton, all for Respondent.

———————

**KONDUROS, J.:** In this medical negligence action, Regional Medical Center (Regional) appeals the trial court's (1) determinations of issues concerning expert witnesses, (2) admission of photographs, (3) publishing requests to admit to the jury, and (4) denial of its motions for a directed verdict and for a new trial absolute or new trial *nisi* remittitur. We affirm.

## FACTS/PROCEDURAL HISTORY

On October 25, 2014, a five-week old child, Robert Lee M., Jr. (Minor), was admitted to Regional for a high fever. Jamie Downing worked at Regional as a nurse and treated Minor during his hospital stay. Medical personnel at Regional did not initially know the cause of Minor's fever but on the day of his admission, they started him on IV antibiotic therapy in case he had an infection. In the early morning of October 28, 2014, Downing administered an antibiotic, ampicillin, into Minor's IV. Shortly thereafter, Minor's hand became swollen with a dark spot and his mother, Tekayah Hamilton, called the nurses' station because Minor was "really crying." The antibiotic Downing gave Minor through the IV caused a third-degree burn to his hand because it infiltrated outside of his vein. On October 30, 2014, Minor was discharged from Regional.

On October 7, 2015, Hamilton, individually and as parent and guardian ad litem for Minor, filed an action against Regional[1] for medical negligence. Regional answered, denying liability and any wrongdoing and asserting numerous affirmative defenses.

Prior to trial, Regional moved to exclude Hamilton's expert, Monica Stobbs, a nurse, from being qualified as an expert witness "in administering/managing pediatric IV therapy." Regional argued Stobbs was not qualified to testify about IV therapy for pediatric patients because she had not administered IV therapy to a pediatric patient and did not review literature specifically about IV therapy for pediatric patients. Hamilton argued the administration and monitoring of an IV is the same for a pediatric or an adult patient and Regional's argument went to Stobbs's credibility rather than her qualifications. The trial court determined it

---

[1] Downing was also named as a defendant in the complaint but was dismissed from the action on June 29, 2016, pursuant to the South Carolina Tort Claims Act. *See* S.C. Code Ann. § 15-78-70(c) (2005) (requiring a person who brings an action against a governmental entity under the Tort Claims Act to "name as a party defendant only the agency or political subdivision for which the employee was acting").

would qualify Stobbs as a nursing care expert and Regional could "make all the hay you want to" about her pediatric experience.

Regional also moved to exclude photographs of Minor's hand on the ground that the danger of unfair prejudice substantially outweighed the probative value of the photographs. The trial court denied that motion as well.

At trial, Hamilton's expert witness, Stobbs, testified the standard of care for IV management is the same for pediatric and adult patients. She indicated that before administering medication through an IV, a nurse must flush the IV with saline to ensure the IV is actually going into the vein and not instead into the skin. She explained saline would not harm the area and cause a burn type of injury if it went into the surrounding tissue of the vein, unlike like an antibiotic which could if it did not go directly into the vein. Stobbs testified that Regional's policies and procedures for IV therapy state a saline flush should be given. Stobbs provided that Minor's medical chart indicated his IV was flushed on several occasions before the medication was administered but that on the occasion when the injury occurred, the chart did not indicate the IV was flushed. Stobbs noted Regional's policies and procedures state that the flush should be documented on the medication record. Stobbs stated: "If it's not documented, it wasn't done." Stobbs testified that Regional breached the standard of care by not documenting the saline flush and by not staying with Minor for at least five minutes after starting medication.

Downing testified that at the time she treated Minor, she had worked as a nurse at Regional for less than three months and had been allowed to work on her own for about two weeks. Downing stated Regional's policies and procedures "are direct instructions" and there is "not room for interpretation" of them. Downing testified that Regional's policies require a saline flush before putting medication into an IV. She believed the policies require flushing be documented on the electronic medical record only when not associated with giving a medication. Downing testified she could not specifically remember administering a saline flush prior to ampicillin that morning but testified her practice is to flush prior to giving medication. Downing stated Minor's medical records indicated a saline flush was given every four hours but Regional's system provided no way to document giving a saline flush before an antibiotic.

Hamilton testified that early in the morning on October 28, Minor's hand swelled and turned black with a "bubble," which burst the following day. She introduced photographs and testified they accurately showed Minor's hand at the time the injury occurred. Hamilton provided she does "a lot of hand motion things with

[Minor] because his hand . . . cramp[s] up."  She testified he sometimes has itching and irritation under the skin and tells her it hurts.  Hamilton explained she was hesitant to have Minor get injections into the injury site because he had already gone through so much.  She was afraid that if he received injections, he would need to have his hand and arm wrapped and would not be able to do anything.  She testified that after the initial injury, he could not crawl because of his hand and she had to constantly watch him to make sure he did not hurt himself.  During Hamilton's testimony, Minor was brought into the court room for the jury to observe his hand.  Hamilton testified she lives in Santee but she takes Minor to MUSC in Charleston to see two doctors.

Minor visited a wound care center fifteen times due to his injury.  Dr. Peter DeVito, an expert in plastic surgery, examined Minor in February 2015, when he was four months old.  Dr. DeVito testified the injury was "too contaminated for a skin graft" and took "a lot of wound care" and time to heal.  Dr. Devito believed the burn resulted in a keloid.  He explained a keloid is "a tumor of scar tissue" that "invades" the normal skin surrounding it and causes burning and itching.  He testified that some areas of the injury were painful while other parts were not due to the nerve damage but that "[t]he whole nature of the wound [wa]s painful."  During Dr. Devito's testimony, Hamilton entered medical bills into evidence.  Hamilton also questioned Dr. DeVito as to the cost of surgery to repair Minor's hand.  He provided it could cost $6,500 to $14,500 or even more if a hospital stay needed to be extended.

During trial, Hamilton moved to publish certain requests to admit from Regional as a stipulation.[2]  Those requests to admit stated:

> 1. Admit the value of the amount in controversy in this action is less than $100,000.00.
>  . . . .
> 2.  Admit the value and amount in controversy in this action is greater than $100,000.00.
>  . . . .
> 3.  Admit the value of Plaintiff's actual damages exceeds $100,000.00.

Hamilton denied the first request to admit and admitted the second and third.

---

[2] The Record contains Hamilton's responses to the requests to admit but does not contain Regional's document in which it made the requests.

Regional objected, arguing the purpose of the requests was to obtain an independent medical examination (IME) under Rule 35, SCRCP,[3] and it was not a stipulation or admission.  Regional asserted the prejudicial effect of publishing the requests outweighed the probative value under Rule 403, SCRE, because it would "reemphasiz[e] for the jury" Hamilton's position that "the case is worth more than a [$100,000]."  Hamilton asked to "explain to the jury what a request to admit is."  The trial court allowed Hamilton to read the exact language of the requests and answers to the jury with no explanation.

After Hamilton rested, Regional made a directed verdict motion, arguing Hamilton failed to present any evidence of gross negligence, particularly because Stobbs did not testify Regional was grossly negligent.  The trial court denied the motion.  Thereafter, Hamilton moved to exclude Regional from asking its expert, Cindy Hurley, a nurse, whether Regional committed gross negligence.  The trial court granted the motion because Hurley was not qualified to testify about the legal concepts of negligence and gross negligence and Regional could elicit testimony about those topics without using the exact legal terminology.[4]

Following Regional's presentation of its case, it renewed its motion for a directed verdict, which the trial court again denied.  After the parties made their closing arguments and the trial court gave the jury instructions, the jury deliberated and found Regional was grossly negligent; the gross negligence proximately caused Minor's and Hamilton's injuries; Minor sustained actual damages of $1,127,280; and Hamilton sustained actual damages of $135,477.

Regional filed a posttrial motion for judgment notwithstanding the verdict (JNOV), for a new trial absolute, or alternatively, for a new trial *nisi* remittitur.  Regional also filed a motion to reduce Minor's damages to the $300,000 statutory cap

---

[3] *See* Rule 35(a), SCRCP ("In any case in which the amount in controversy exceeds $100,000 actual damages, and the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control.").

[4] The trial court allowed Regional to proffer Hurley's testimony as to if Regional was negligent or grossly negligent.

pursuant to the Tort Claims Act[5] and to reduce Hamilton's damages to the amount of the medical expenses, which it asserted was $20,854.  Hamilton filed a memorandum in opposition to the motions.  The trial court granted the motion to reduce Minor's damages to $300,000 and denied all other motions.  This appeal followed.

## STANDARD OF REVIEW

"In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law . . . ."  *Byrd ex rel. Julia B. v. McLeod Physician Assocs. II*, 427 S.C. 407, 412, 831 S.E.2d 152, 154 (Ct. App. 2019) (quoting *Wright v. Craft*, 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct. App. 2006)).  Additionally, the jury's factual findings will not be disturbed unless the record contains no evidence to reasonably support those findings.  *Id.*

## LAW/ANALYSIS

### I.  Hamilton's Expert Testimony

Regional maintains the trial court abused its discretion in qualifying Hamilton's expert Stobbs as a general nurse and in permitting her to testify as to the standard of care for pediatric IV administration.  Regional argues the case was about pediatric—not adult—nursing and IV medicine; Stobbs failed to meet the qualifications as set forth in Rule 702, SCRE, and *Gooding v. St. Francis Xavier Hospital*[6]; and the court allowed Stobbs to testify outside of the scope of her expert qualification.  We disagree.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Rule 702, SCRE.  "In determining a witness's qualifications as an expert, the trial court should not have a solitary focus, but rather, should make an inquiry broad in scope."  *Watson v. Ford Motor Co.*, 389 S.C. 434, 447, 699 S.E.2d 169, 176 (2010).  "All expert testimony must meet the requirements of Rule 702, regardless of whether it is scientific, technical, or

---

[5] *See* S.C. Code Ann. § 15-78-120(a)(1) (2005) (providing "no person shall recover in any action or claim brought hereunder a sum exceeding [$300,000] because of loss arising from a single occurrence").

[6] 326 S.C. 248, 487 S.E.2d 596 (1997).

otherwise." *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 74, 735 S.E.2d 650, 655 (2012).

"The test for qualification of an expert is a relative one that is dependent on the particular witness's reference to the subject. The qualification of a witness as an expert is within the trial court's discretion, and this [c]ourt will not reverse that decision absent an abuse of discretion." *Watson*, 389 S.C. at 447, 699 S.E.2d at 176 (citation omitted). "The qualification of an expert witness and the admissibility of the expert's testimony are each matters largely within the trial [court's] discretion." *McMillan v. Durant*, 312 S.C. 200, 204, 439 S.E.2d 829, 831 (1993). "An abuse of discretion occurs when the [trial] court's rulings 'either lack evidentiary support or are controlled by an error of law.'" *Graves*, 401 S.C. at 74, 735 S.E.2d at 655 (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)).

"To be competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.'" *Gooding*, 326 S.C. at 252-53, 487 S.E.2d at 598 (quoting *O'Tuel v. Villani*, 318 S.C. 24, 28, 455 S.E.2d 698, 701 (Ct. App. 1995), *overruled on other grounds by I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000)). For expert testimony to be admissible, "the expert must have 'acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter,' although he 'need not be a specialist in the particular branch of the field.'" *Graves*, 401 S.C. at 74, 735 S.E.2d at 655 (quoting *Watson*, 389 S.C. at 446, 699 S.E.2d at 175); *see also Melton v. Medtronic, Inc.*, 389 S.C. 641, 655, 698 S.E.2d 886, 893 (Ct. App. 2010) ("Expert testimony need not come from a specialist in the same field as the defendant."). "The test is a relative one, depending on the particular witness's reference to the subject; an expert is not limited to any class of persons acting professionally." *Botehlo v. Bycura*, 282 S.C. 578, 586, 320 S.E.2d 59, 64 (Ct. App. 1984). "The fact that a witness is not a specialist in the particular branch involved affects only the weight of the witness's testimony, and affords no basis for completely rejecting it." *Bonaparte v. Floyd*, 291 S.C. 427, 439, 354 S.E.2d 40, 48 (Ct. App. 1987).

"In *Creed*[ *v. City of Columbia*], a general practitioner was allowed to testify as an expert witness on the mental and emotional damages suffered by a tort victim, even where the [defendant] objected to the evidence because the expert was not a neurologist or psychologist." *McMillan*, 312 S.C. at 204, 439 S.E.2d at 831 (citing *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993)). In that case, the

supreme court determined "[a] physician is not incompetent to testify merely because he is not a specialist in the particular branch of his profession involved." *Creed*, 310 S.C. at 345, 426 S.E.2d at 786. The court held, "The fact that [the physician was] not a specialist [went] to the weight of his testimony, not its admissibility." *Id.*

In *Botehlo*, this court affirmed the grant of summary judgment to the defendant podiatrist when the plaintiff submitted expert testimony by an orthopedic surgeon as to the standard of care for a podiatrist. 282 S.C. at 585-87, 320 S.E.2d at 64-65. The court recognized the standard of care for a podiatrist is different from that of a physician or surgeon. *Id.* at 585, 320 S.E.2d at 64. The court noted the orthopedic surgeon had no knowledge of or experience in the practice of podiatry. *Id.* at 587, 320 S.E.2d at 65. The court found the plaintiff "had to present evidence on the standard of care required of podiatrists, not physicians and surgeons." *Id.* at 585, 320 S.E.2d at 64.

In *McMillan*, the supreme court determined the trial court did not abuse its discretion in admitting the expert's testimony. 312 S.C. at 205, 439 S.E.2d at 832. The supreme court stated, "[T]he expert physician was thoroughly examined as to his credentials and background, which included his professional interaction with a multitude of various nursing staffs and his teaching nursing courses at" universities. *Id.* The court noted the hospital "based its objection to the physician's qualification as an expert on nursing on the contention that a neurosurgeon was not qualified to testify about the appropriate standard of nursing care." *Id.* The court found, "The fact that the expert was a physician and not a nurse would merely go to the weight of his testimony, not to its admissibility. As a teacher in the field of nursing, the neurosurgeon here . . . was amply qualified to render an opinion in the field of nursing." *Id.*

In *Gooding*, the plaintiff patient "sought to have [an emergency medical technician (EMT) and paramedic] qualified as an expert witness in intubation, not as an expert in the field of anesthesiology. [The EMT's] training and experience qualified him to testify as an expert in the limited area of intubation." 326 S.C. at 253, 487 S.E.2d at 598. "There was no requirement that [the plaintiff's] expert witness be an anesthesiologist in order to testify about intubation procedures." *Id.* "The fact that [the EMT] may have had less medical training and education than [the anesthesiologist defendant] is relevant to his credibility as a witness and affects the weight, not the admissibility of his testimony." *Id.* at 253-54, 487 S.E.2d at 598. Accordingly, both the supreme court and this court found the EMT

"should have been permitted to testify as an expert witness." *Id.* at 254, 487 S.E.2d at 598.

In the present case, the trial court did not abuse its discretion in allowing Stobbs to testify as an expert witness. Regional's concerns with Stobbs not having experience in pediatric IVs as opposed to general IV knowledge went to the weight of the evidence, not Stobbs's qualification as an expert. Stobbs testified that there was not a difference in the IV treatment for children and adults. Therefore, we affirm the trial court's qualification of her as an expert witness.[7]

## II. Directed Verdict and JNOV

Regional asserts because Hamilton did not establish gross negligence, the trial court erred by denying its motions for a directed verdict and JNOV. It contends because it is a governmental entity, Hamilton was required to prove gross negligence. Regional maintains Hamilton failed to demonstrate through evidence or testimony that Downing failed to exercise slight care or intentionally failed to do what she ought to have done in the care and treatment of Minor. It argues because Hamilton failed to provide any evidence or testimony of gross negligence, no reasonable jury could have made any such finding. We disagree.

When ruling on a directed verdict or JNOV motion, the trial court must view the evidence and the inferences that reasonably can be drawn from it in the light most

---

[7] To the extent Regional argues Stobbs's testimony exceeded the scope for which the trial court qualified her, we find this issue unpreserved. "[A]n expert's testimony may not exceed the scope of his expertise." *State v. Commander*, 396 S.C. 254, 264, 721 S.E.2d 413, 418 (2011). In its motion in limine, Regional argued Hamilton was "actually trying [to] qualify[] [Stobbs] as a pediatric nurse or a nurse familiar with pediatric IVs." The trial court qualified Stobbs as a nursing care expert, "[n]ot neonatal or anything like that." At the beginning of Stobbs's testimony, Hamilton stated she was introducing Stobbs as an expert in nursing, and the trial court informed the jury she was qualified as an expert in nursing. At this point, Stobbs had testified regarding only her educational and employment background. Regional asked the court to note its prior objection for the record; Regional made no further objection regarding her qualification. Once Stobbs provided testimony Regional believed exceeded her qualification in nursing, Regional was required to object at that point. *See Cogdill v. Watson*, 289 S.C. 531, 537, 347 S.E.2d 126, 130 (Ct. App. 1986) ("The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object.").

favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). This court must follow the same standard. *Welch v. Epstein*, 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct. App. 2000). "If more than one reasonable inference can be drawn or if the inferences to be drawn from the evidence are in doubt, the case should be submitted to the jury." *Chaney v. Burgess*, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965). The issue must be submitted to the jury if material evidence tends to establish the issue in a reasonable juror's mind. *Parrish v. Allison*, 376 S.C. 308, 319, 656 S.E.2d 382, 388 (Ct. App. 2007). The appellate court will reverse the trial court's ruling only when no evidence supports the ruling or when an error of law controls the ruling. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006). "[N]either the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).

"When reviewing a motion for directed verdict, this court . . . may only reverse a jury's verdict if the factual findings implicit within it are contrary to the only reasonable inference from the evidence." *Maher v. Tietex Corp.*, 331 S.C. 371, 376, 500 S.E.2d 204, 207 (Ct. App. 1998). An appellate court must affirm a trial court's denial of a directed verdict motion unless it determines the jury could not reasonably have found in favor of the nonmoving party. *Broyhill v. Resol. Mgmt. Consultants, Inc.*, 401 S.C. 466, 472, 736 S.E.2d 867, 870 (Ct. App. 2012). The appellate court must determine whether a verdict for the nonmoving party would be reasonably possible if the facts were liberally construed in that party's favor. *Erickson*, 368 S.C. at 463, 629 S.E.2d at 663.

A "governmental entity is not liable for a loss resulting from . . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any . . . patient . . . of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25) (2005). Gross negligence is the absence of care necessary under the circumstances. *Grooms v. Marlboro Cnty. Sch. Dist.*, 307 S.C. 310, 313, 414 S.E.2d 802, 804 (Ct. App. 1992). "It 'connotes the failure to exercise a slight degree of care.'" *Id.* (quoting *Wilson v. Etheredge*, 214 S.C. 396, 400, 52 S.E.2d 812, 814 (1949)). "A defendant is guilty of gross negligence if he is so indifferent to the consequences of his conduct as not to give slight care to what he is doing." *Jackson v. S.C. Dep't of Corr.*, 301 S.C. 125, 126, 390 S.E.2d 467, 468 (Ct. App. 1989), *aff'd*, 302 S.C. 519, 397 S.E.2d 377 (1990) (per curiam). Gross negligence concerns the intentional, conscious failure to do something that it is incumbent upon one to do or the intentional doing of a thing one ought not to do. *Grooms*,

307 S.C. at 313, 414 S.E.2d at 804. "[T]he fact that the [defendant] might have done more does not negate the fact that it exercised 'slight care.'" *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 312, 534 S.E.2d 275, 278 (2000).

"Additionally, while gross negligence ordinarily is a mixed question of law and fact, when the evidence supports but one reasonable inference, the question becomes a matter of law for the court." *Id.* at 310, 534 S.E.2d at 277. "In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury." *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 332, 566 S.E.2d 536, 545 (2002).

The trial court properly denied Regional's motions for directed verdict and JNOV. Hamilton's expert was not required to state that Minor's treatment at Regional amounted to gross negligence.[8] The testimony presented a question of fact for the jury as to whether the facts amounted to gross negligence. Accordingly, we affirm the denial of the motions.

## III. Photographs

Regional argues the trial court abused its discretion by admitting into evidence photographs of Minor's hand. It contends the photographs were not necessary to substantiate Hamilton's case because it did not dispute the existence of a wound and Hamilton had ample other evidence of the wound that was less prejudicial than the photographs. It maintains the photographs were grotesque, up-close images that made the wound appear substantially larger than reality and the photographs did not include a scale to indicate measurements and proportions. Regional argues the photographs were graphic, inflammatory, and not an accurate reflection of the child's hand and injuries. It asserts the photographs, by their very nature, had a prejudicial tendency to arouse the emotions of the jury. Regional further contends the photographs did not reflect the current state of the wound. It asserts Minor appeared during trial and showed the jury his scar, which did not appear as it did in

---

[8] Hamilton notes that she "argued at trial that a medical malpractice, not a gross negligence, standard applies to this case because it concerns a nurse's administration of medication and not 'supervision, protection, control, confinement, or custody' of a patient." But she states that due to the jury's verdict and Regional's arguments, her argument on appeal is based on the gross negligence standard. However, she asserts this case should not be construed as establishing that the gross negligence standard in section 15-78-60(25) applies to a nurse's administration of medication.

the photographs.  It argues that witnesses, including Hamilton's own expert, testified the scar appeared healed since February 2015 and did not look like the photographs shown.  Accordingly, it maintains the photographs were of little probative value.  Regional contends the excessive jury verdict demonstrates the prejudice from the photographs and the purpose of the photographs was to arouse the sympathy of the jury.  We disagree.

"The trial court has broad discretion in the admission or rejection of evidence and will not be overturned unless it abuses that discretion."  *Johnson v. Sam Eng. Grading, Inc.*, 412 S.C. 433, 448, 772 S.E.2d 544, 551 (Ct. App. 2015) (quoting *Davis v. Traylor*, 340 S.C. 150, 157, 530 S.E.2d 385, 388 (Ct. App. 2000)).  "The trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law."  *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 108, 498 S.E.2d 395, 404 (Ct. App. 1998).  "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support."  *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005).  "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof."  *Id.*

"As a general rule, all relevant evidence is admissible. '"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 27 (2014) (citation omitted) (quoting Rule 401, SCRE).  "Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue."  *Hoeffner v. Citadel*, 311 S.C. 361, 365, 429 S.E.2d 190, 192 (1993).  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, SCRE.  "A trial [court's] decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances."  *Johnson v. Horry Cnty. Solid Waste Auth.*, 389 S.C. 528, 534, 698 S.E.2d 835, 838 (Ct. App. 2010) (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003)).

"Demonstrative evidence includes items such as a photograph, chart, diagram, or video animation that explains or summarizes other evidence and testimony.  Such

evidence has secondary relevance to the issues at hand; it is not directly relevant, but must rely on other material testimony for relevance." *Clark v. Cantrell*, 339 S.C. 369, 383, 529 S.E.2d 528, 535 (2000). "Demonstrative evidence is distinguishable from exhibits that comprise 'real' or substantive evidence, such as the actual murder weapon or a written document containing allegedly defamatory statements." *Id.*

"The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court. If [an] offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996) (citation omitted). "Courts must often grapple with disturbing and unpleasant cases, but that does not justify preventing essential evidence from being considered by the jury, which is charged with the solemn duty of acting as the fact-finder." *Collins*, 409 S.C. at 535, 763 S.E.2d at 28. "[I]t is the duty of courts and juries to examine the evidence in even the most unpleasant of circumstances: 'Courts and juries cannot be too squeamish about looking at unpleasant things, objects, or circumstances in proceedings to enforce the law and especially if truth is on trial.'" *Id.* (quoting *Nichols v. State*, 100 So. 2d 750, 756 (Ala. 1958)). "The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it." *Id.* (quoting *Nichols*, 100 So. 2d at 756); *id.* ("Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand [the] testimony. Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered." (alteration by court) (quoting *Camargo v. State*, 940 S.W.2d 464, 467 (Ark. 1997))).

"Numerous jurisdictions have found that photos are not inadmissible merely because they are gruesome, especially where . . . the photos simply mirror the unfortunate reality of the case." *Id.* at 535-36, 763 S.E.2d at 28. "As one court has stated, 'The law is well settled that the mere fact that a photograph is gruesome is not a reason for its non admission.'" *Id.* at 536, 763 S.E.2d at 28 (quoting *State v. Ernst*, 114 A.2d 369, 373 (Me. 1955)).

"Moreover, the standard is not simply whether the evidence is prejudicial; rather, the standard under Rule 403, SCRE[,] is whether there is a danger of *unfair* prejudice that *substantially* outweighs the probative value of the evidence." *Id.*

In *Holmes v. Black River Electric Cooperative, Inc.*, the defendant asserted "pictures of [the plaintiff's] injured and amputated arm should not have been admitted in evidence because they may have aroused the sympathy of the jury to [the defendant's] prejudice." 274 S.C. 252, 258, 262 S.E.2d 875, 878 (1980). The defendant argued "the injuries depicted by the photographs were hideous, grotesque, and grossly unfair" but did not contend the photographs did not accurately reflect the plaintiff and the injuries at the time taken. *Id.* The supreme court stated the photographs undoubtedly "prejudiced the defendant's case in the sense that they were detrimental, but they showed a condition [that the plaintiff] was entitled to either describe to the jury in words or by pictures, or a combination of the two." *Id.* The court held, "This demonstrative evidence aided the jury in its evaluation of the injuries and pain suffered." *Id.* The court found the photographs were not introduced "for the sole purpose of inflaming the minds of the jury; they served the proper purpose of bringing vividly to the jurors the details of tremendous injuries." *Id.* Accordingly, the court held the trial court did not abuse its discretion in admitting the photographs into evidence. *Id.*

In the present case, the photographs at issue were relevant as the injury was to Minor's hand. Particularly given Minor's age, the photographs were helpful in showing what the injury was like for him. The photographs helped corroborate the testimony concerning the extent of the injury. Regional provides no support for its argument that the jury could consider the injury in only its current state and not when it occurred or was still healing. Further, the danger of unfair prejudice does not substantially outweigh the probative value. Accordingly, the trial court did not abuse its discretion in allowing the photographs. Therefore, we affirm the trial court's admission of the photographs of Minor's injured hand.

## IV. Regional's Expert Testimony

Regional asserts the trial court abused its discretion in prohibiting its expert Hurley from testifying as to whether Regional was grossly negligent or negligent. It argues it was not asking Hurley to give an opinion as to an issue of law, as this was not possible because Hurley was a nurse and not a legal expert. It contends that asking Hurley this question should not have led to any confusion, as the jury was aware that Hurley was an expert in nursing, not law. Regional maintains that the purpose of the question was to ask its expert her opinion, based on her experience in pediatric nursing, and this would have helped educate and better inform the jury. Regional further asserts that this error prejudiced it as evidenced by the fact that the jury returned a grossly excessive verdict. We disagree.

"The trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." *Hawkins*, 330 S.C. at 108, 498 S.E.2d at 404. "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Fields*, 363 S.C. at 26, 609 S.E.2d at 509.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Graves*, 401 S.C. at 73-74, 735 S.E.2d at 655 (quoting Rule 702, SCRE). The supreme court has held that "[w]hile it is true that 'an opinion . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact,'" an affidavit that "attempted to usurp the trial court's role in determining whether" a party was entitled to summary judgment was inadmissible. *Dawkins v. Fields*, 354 S.C. 58, 65, 580 S.E.2d 433, 437 (2003) (omission by court) (quoting Rule 704, SCRE). "In general, expert testimony **on issues of law** is inadmissible." *Id.* at 66, 580 S.E.2d at 437. In *O'Quinn v. Beach Associates*, the supreme court found "testimony . . . was offered to establish a conclusion of law within the exclusive province of the court and thus was properly excluded." 272 S.C. 95, 107, 249 S.E.2d 734, 740 (1978).

"Generally, '[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' However, expert testimony on issues of law is rarely admissible." *Carter v. Bryant*, 429 S.C. 298, 313, 838 S.E.2d 523, 531 (Ct. App. 2020) (alteration by court) (quoting Rule 704, SCRE). In excluding opinion testimony in the form of a legal conclusion, "courts have advanced such reasons as it allows a witness to tell the jury what verdict to reach, it tends to confuse jurors, and . . . it increases the likelihood that jurors will look to the witness rather than the trial [court] for guidance as to the law." *Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 486 n.4 (D.S.C. 1993).

"The common law and the federal rules of evidence forbid opinions on issues of law, except foreign law." *Carter*, 429 S.C. at 313, 838 S.E.2d at 531. "Rule 704, SCRE, is identical to Rule 704 of the Federal Rules of Evidence as it existed before a 1984 amendment." *Id.* "The federal advisory committee note emphasizes that Rule 704's 'abolition of the ultimate issue rule does not lower the bar so as to admit all opinions,' because an opinion on the ultimate issue has to be 'otherwise admissible' . . . ." *Id.* In *Carter,* this court found this meant the opinion "must be

helpful to the jury as required by Rule 702, SCRE, and satisfy the strictures of Rule 403, SCRE." *Id.* The court determined the opinion in that case "was not helpful to the jury because it stated a legal conclusion and essentially told the jury what result to reach on the probable cause question." *Id.*

"[S]everal courts have held that the term 'negligence' conveys a legal conclusion and is therefore inadmissible." *Hermitage Indus.*, 814 F. Supp. at 487 (citing *Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989); *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 709 (2d Cir. 1989)). "With respect to negligence actions, an opinion phrased in terms of negligence itself, involving not only the formulation of a legal standard by the witness but also one substantially immune to exploration, seems calculated to confuse or mislead rather than assist the trier." *Id.* (quoting Michael H. Graham, *Federal Practice and Procedure* § 6661, at 319 (interim ed. 1992)). "[T]he term 'negligence' in the common vernacular encompasses a much broader standard" than the legal definition. *Id.* "While there are undoubtedly non-lawyers whose definition of the term 'negligent' more closely resembles the legal term, the conclusion is inescapable that the legal definition of the term has a separate meaning which is distinct from the common vernacular." *Id.* In *Hermitage Industries*, the South Carolina federal district court found "the proffered testimony of [the] defendant's expert witness that [the] plaintiff was 'negligent' constitute[d] a legal conclusion and [wa]s therefore inadmissible." *Id.*

When a plaintiff "relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence." *Ellis v. Oliver*, 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996). "[T]he highly technical nature of malpractice litigation" mandates this rule. *Id.* Because "many malpractice suits involve ailments and treatments outside the realm of ordinary lay knowledge, expert testimony is generally necessary." *Id.*

The trial court did not abuse its discretion by preventing Regional from asking Hurley explicitly if Regional committed negligence or gross negligence. Asking Hurley that question would have been asking her to form a legal conclusion, which would have been inadmissible. The fact that she is a nurse and not a lawyer or other legal expert does not make a difference; her answer could confuse the jury particularly because negligence could have a broader meaning outside of the legal definition. Accordingly, we affirm the trial court's prohibiting Hurley from testifying if she believed Regional was negligent or grossly negligent.

## V. Requests to Admit

Regional maintains the trial court abused its discretion in permitting the requests to admit to be published to the jury. Regional asserts the publication prejudiced it, violating Rule 403, SCRE, because the publication only confused the issues for the jury. Regional concedes this is an unusual circumstance and the case law seems to address only issues with withdrawal by the admitting party. Regional asserts the requests to admit were not stipulations under Rule 43(k), SCRCP,[9] but rather were a discovery tool. It contends the purpose of the requests to admit was to obtain an IME, not for Hamilton to represent that Regional admitted the damages exceeded $100,000. Regional contends that although facts may be stipulated, the requests to admit were subjective, as they went to damages. It argues that because the purpose for the requests was to get Hamilton's view of the case in order to obtain an IME, the requests were subjective, not factual, and thus, could not be stipulated. It maintains that allowing the requests to admit to be published caused the jury to believe it had to award a verdict of at least $100,000. Regional argues this effectively directed a verdict of liability in Hamilton's favor, thereby impeding presentation of the merits of its case. We disagree.

The South Carolina Rules of Civil Procedure provide:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of [the rules of discovery] set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . .

Rule 36(a), SCRCP.

"Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Rule 36(b), SCRCP. "Requests for [a]dmissions [a]re just as binding as pleadings on the parties . . . ."

---

[9] Rule 43(k), SCRCP ("No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record, or reduced to writing and signed by the parties and their counsel.").

*Scott v. Greenville Hous. Auth.*, 353 S.C. 639, 648, 579 S.E.2d 151, 156 (Ct. App. 2003). "The efficacy of these admissions is akin to the doctrine of judicial estoppel: an admission precludes the admitting party from arguing facts at trial contrary to its responses to a request to admit, absent an amendment to or revocation of the admission as allowed under the rules." *Com. Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs., Inc.*, 347 S.C. 545, 554, 556 S.E.2d 718, 723 (Ct. App. 2001) (footnote omitted). "Admissions under Rule 36 are treated as admissions in pleadings." *Id.* at 554-55, 556 S.E.2d at 723 (citing James F. Flanagan, *South Carolina Civil Procedure* 304 (1996) ("Admissions are similar to pleadings."); *Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.*, 496 S.E.2d 546, 548 (Ga. Ct. App. 1998) ("In form and substance [a response to a request to admit] is comparable to an admission in pleadings or stipulation of facts and as such is generally regarded as a judicial admission rather than evidentiary admission of a party.")). "Pleadings are not evidence." 71 C.J.S. *Pleading* § 1; *see also Sears v. Smith*, 142 S.E.2d 792, 795 (Ga. 1965) ("Pleadings per se are not evidence . . . ."); *TNT Cattle Co. v. Fife*, 937 N.W.2d 811, 831 (Neb. 2020) ("The pleadings in a cause are not a means of evidence, but a waiver of all controversy, so far as the opponent may desire to take advantage of them, and therefore, a limitation of the issues.").

Similarly, "[j]udicial admissions . . . 'are "not evidence at all but rather have the effect of withdrawing a fact from contention."'" *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th Cir. 2022) (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)). "In the same category are admissions in response to a request to admit under" Rule 36 of the Federal Rules of Civil Procedure. 2 Kenneth S. Broun et al., *McCormick On Evidence* § 254 n.12 (Robert P. Mosteller ed., 8th ed.).

"[R]equests to admit are not submitted to the jury; rather, the proper course of action is to publish the admissions to the jury." *Scott*, 353 S.C. at 649, 579 S.E.2d at 156; *see also* Rule 43(g), SCRCP ("Counsel for any party may read his pleadings to the jury. . . .").

"Once an answer to a [r]equest for [a]dmissions is amended under Rule 36, both the initial answer and the amended answer may be published to the jury." *Tuomey Reg'l Med. Ctr., Inc. v. McIntosh*, 315 S.C. 189, 191, 432 S.E.2d 485, 487 (1993). "The jury may consider the initial answers as evidence, while the party who made such answers 'is free to explain why it was made and [amended].'" *Id.* (alteration by court) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure:* Civil § 2264 at 745 (1970)). "It was for the jury to weigh the evidence along with" the answers to the requests for admissions. *Id.*

As Regional acknowledges, case law is limited on this issue, as most of the law speaks to conflicts over publishing to the jury requests to admit *responses*. Here, the dispute is over publishing the actual request. However, based on the South Carolina Rules of Civil Procedure, publishing requests to admit is proper. Rule 403, SCRE, does not apply to the publication of a request to admit. Moreover, in addition to the requests to admit that the damages, amount in controversy, or value were over $100,000, a request to admit "the value of the amount in controversy in this action is less than [$100,000]" was also published to the jury. The trial court also instructed the jury to evaluate the evidence and if it decided any damages were warranted, it was to determine the amount. *See McLean v. Godwin Props., Inc.*, 292 S.C. 518, 522, 357 S.E.2d 473, 475 (Ct. App. 1987) ("[A] jury is presumed to understand the charge."). Accordingly, the trial court did not err in allowing the requests to admit to be published to the jury.

## VI. New Trial Absolute or New Trial *Nisi* Remittitur

Regional asserts the trial court abused its discretion in not granting a new trial absolute when the verdict was grossly excessive and shockingly disproportionate and contrary to the evidence admitted at trial. It contends (1) little testimony was given regarding any pain and suffering; (2) testimony was given establishing that very little has been done or is planned in regards to treatment; and (3) although there is scar tissue and the scar is permanent, the hand is fully functioning, and the wound is "well-healed" and "stable" and will not get worse. Regional argues the evidence presented cannot support a $1,127,280 verdict for Minor and $135,477 for Hamilton, and thus, the size of the verdict alone is sufficient to show that the jury must have been moved by passion or prejudice. It asserts the verdict of $1,127,280 for Minor is 54 times the amount of actual damages of $20,854, which is grossly excessive and shocks the conscience. It further contends the $135,477 verdict for Hamilton is also grossly excessive, as past and future medical damages only amount to $20,854, she testified she has no plans for Minor to undergo any steroidal injections or scar revision surgery, and she is not entitled to any pain or suffering.

In the alternative, Regional argues the verdict was, at the very least, merely excessive entitling it to a new trial *nisi* remittitur. It contends that even after capping Minor's judgment at $300,000 as required by the Tort Claims Act, the judgment is still, at the very minimum, merely excessive. Moreover, it contends

the amount awarded to Hamilton was also, at the very minimum, merely excessive. We disagree.

In reviewing the jury's verdict, appellate courts give great deference to the trial court because the trial court "possesses a better-informed view of the damages than" an appellate court because the trial court "heard the evidence and is more familiar with the evidentiary atmosphere at trial." *Vinson v. Hartley*, 324 S.C. 389, 405-06, 477 S.E.2d 715, 723 (Ct. App. 1996). "Accordingly, the decision to grant a new trial is left to the sound discretion of the trial court and generally will not be disturbed on appeal." *Wright v. Craft*, 372 S.C. 1, 36, 640 S.E.2d 486, 505 (Ct. App. 2006). "An abuse of discretion occurs when the trial court's findings are wholly unsupported by the evidence or the conclusions reached are controlled by an error of law." *Id.* "In deciding whether to assess error when a new trial motion is denied, this [c]ourt must consider the testimony and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (alteration by court) (quoting *Welch*, 342 S.C. at 302-03, 536 S.E.2d at 420). "[T]he jury's determination of damages is entitled to substantial deference." *Welch*, 342 S.C. at 303, 536 S.E.2d at 420.

"When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial [court] must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Riley v. Ford Motor Co.*, 414 S.C. 185, 192, 777 S.E.2d 824, 828 (2015) (quoting *Allstate Ins. Co. v. Durham*, 314 S.C. 529, 530, 431 S.E.2d 557, 558 (1993)).

"[W]hen the verdict indicates the jury was unduly liberal in determining damages, the trial court alone has the power to reduce the verdict by the granting of a new trial *nisi remittitur*." *Welch*, 342 S.C. at 303, 536 S.E.2d at 420. "A motion for new trial *nisi remittitur* asks the trial court in its discretion to reduce the verdict because it is merely excessive, although not motivated by considerations such as passion, caprice[,] or prejudice." *Id.* "The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion." *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006). "In considering a motion for new trial *nisi*, the trial court must evaluate the adequacy of the verdict in light of the evidence presented." *Welch*, 342 S.C. at 303, 536 S.E.2d at 420.

"If the amount of the verdict is grossly excessive so as to be the result of passion, caprice, prejudice[,] or some other influence outside the evidence, the trial [court]

must grant a new trial absolute, not a new trial *nisi remittitur*." *Id.* "The trial [court] must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption[,] or some other improper motives." *Vinson*, 324 S.C. at 404, 477 S.E.2d at 723. "To warrant a new trial, the verdict must be so grossly excessive as to clearly indicate the influence of an improper motive on the jury." *Wright*, 372 S.C. at 36, 640 S.E.2d at 505. "The failure of the trial [court] to grant a new trial absolute in this situation amounts to an abuse of discretion and on appeal this [c]ourt will grant a new trial absolute." *O'Neal v. Bowles*, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993).

The trial court did not abuse its direction in denying Regional's motion for a new trial absolute or a new trial *nisi* remittitur. The record contains evidence to support the damages award. The verdict does not shock the conscience or clearly indicate it was reached as the result of passion, caprice, prejudice, partiality, corruption or other improper motives. Additionally, the verdict was not excessive. Moreover, the trial court substantially reduced the damages awarded for Minor pursuant to the Tort Claims Act. Accordingly, we affirm the denial of the motions.

## CONCLUSION

Based on the foregoing, the trial court did not abuse its discretion in qualifying Hamilton's expert witness and allowing her to testify as to the standard of care, prohibiting Regional's expert from testifying as to whether Regional was grossly negligent or negligent, or admitting the photographs of Minor's hand. Additionally, the trial court did not err in publishing the requests to admit to the jury. Further, the trial court did not err in denying Regional's motion for a directed verdict or abuse its discretion in denying Regional's motion for a new trial absolute or new trial *nisi* remittitur. Accordingly, the trial court's determinations are

**AFFIRMED.**

**HEWITT and VINSON, JJ., concur.**